**In re Keith Palmer PENSOM, Jr.**

**No. 04–03–00211–CV.**

Court of Appeals of Texas, San Antonio.

Nov. 5, 2003.

253

Sara A. Herrmann, Law Office of Sara A. Herrmann, Stephani A. Walsh, Law Office of Stephani A. Walsh, Charles H. Sierra, Law Office of William McKamie, P.C., San Antonio, for appellant.

Lisa A. Vance, T. Allen Rasmussen, Law Office of Lisa A. Vance, P.C., James E. Monnig, David L. Ylitalo, Haynes and

Boone, L.L.P., San Antonio, San Antonio, for appellee.

Sitting: ALMA L. LÓPEZ, Chief Justice, CATHERINE STONE, Justice, SANDEE BRYAN MARION, Justice.

## OPINION

Opinion by SANDEE BRYAN MARION, Justice.

Relator is the father of two young boys. The real party in interest, Maria Weaver, is the boys' maternal grandmother. Relator and his wife, Melanie, were named joint managing conservators following their divorce, and the boys lived with Melanie. During Melanie's illness, she and the children lived with Maria and Maria's husband, James, for about six years at the Weaver's home in San Antonio. After Melanie died, Maria and James (the step-grandfather), filed an Original Petition in Suit Affecting the Parent–Child Relationship, in which the Weavers asked to be appointed temporary sole managing conservators. Alternatively, the Weavers asked that they be appointed joint managing conservators or granted reasonable access to the children. The court entered temporary orders, that included, among other orders, that Maria be granted access to the children. Relator filed this mandamus proceeding on two issues: (1) under *Troxel v. Granville*, 530 U.S. 57, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000), Family Code section 153.433 [2] (the "Grandparent Access

2. The Grandparent Access Statute allows grandparents access to their grandchildren under certain circumstances, including as follows:

(1) at the time the relief is requested, at least one biological or adoptive parent of the child has not had that parent's parental rights terminated; and

Statute") is unconstitutional and (2) even if the statute is constitutional, there must be a finding that he is an unfit parent and the trial court abused its discretion in granting Maria access because it did not find him to be an unfit parent.

## CONSTITUTIONALITY OF STATUTE

■ We interpret relator's challenge to the Grandparent Access Statute as an assertion that it is unconstitutional on its face. A facial invalidation of a statute is appropriate if it can be shown that under no circumstances can the statute be constitutionally applied. *United States v. Salerno,* 481 U.S. 739, 745, 107 S.Ct. 2095, 2100, 95 L.Ed.2d 697 (1987). We conclude the Grandparent Access Statute can be constitutionally applied when the constitutional principles announced in *Troxel* are considered.

■ The United States Supreme Court has recognized that the interest of parents in the care, custody, and control of their children "is perhaps the oldest of the fundamental liberty interests." *Troxel,* 530 U.S. at 65, 120 S.Ct. at 2060. Similarly, Texas has long recognized that the natural right existing between parents and their children is of constitutional dimensions. *See Wiley v. Spratlan,* 543 S.W.2d 349, 352 (Tex.1976); *Holick v. Smith,* 685 S.W.2d 18, 20 (Tex.1985); TEX. HUM. RES.CODE ANN. § 40.002(b)(2) (Vernon 2001). These parental interests are a fundamental right protected by the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *Troxel,* 530 U.S. at 65, 120 S.Ct. at 2060.

■ Encompassed within the well-established fundamental right of parents to raise their children is the right to determine with whom their children should associate. *See Troxel,* 530 U.S. at 79, 120 S.Ct. at 2067 (Souter, J., concurring). The Grandparent Access Statute provides a mechanism by which the State may intervene in the basic exercise of this parental right because it allows courts to determine whether parents will be required to turn their children over to the grandparents against the parents' wishes. The power of a trial court to adjudicate such disputes and to enforce its own orders constitutes state involvement in a way that clearly implicates parents' fundamental liberty interests in the care and custody of their children. Because a fundamental right is implicated here, we apply strict scrutiny and will uphold the statute if it is narrowly tailored to serve a compelling government interest. *See Troxel,* 530 U.S. at 80, 120 S.Ct. at 2068 (Thomas, J., concurring) (noting that strict scrutiny is the appropriate standard for reviewing the infringement of fundamental rights such as parental right to direct child's upbringing).

■ Neither party here and no Texas court that has considered the Grandparent Access Statute has articulated the compel-

---

(2) access is in the best interest of the child, and at least one of the following facts is present:

\* \* \*

(B) the parents of the child are divorced or have been living apart for the three-month period preceding the filing of the petition or a suit for the dissolution of the parents' marriage is pending; ... or

\* \* \*

(F) the child has resided with the grandparent requesting access to the child for at least six months within the 24 month period preceding the filing of the petition.

TEX. FAM.CODE. ANN. § 153.433 (Vernon 2002).

ling government interest served by the statute. The statute itself speaks in terms of the child's best interest. *See* TEX. FAM. CODE ANN. § 153.433(2). And, we acknowledge the State has an interest in the family relationship in general. *In the Int. of J.W.T.,* 872 S.W.2d 189, 197 (Tex.1994) (recognizing "legitimate interest in minimizing familial disruptions that are harmful" to a child); *In the Int. of S.A.V.,* 837 S.W.2d 80, 84 (Tex.1992) ("A family relationship is among those matters in which the forum state has ... a strong interest. ..."); *White v. Blake,* 859 S.W.2d 551, 564 (Tex.App.-Tyler 1993, no writ) (recognizing State's sovereign interest in and responsibility for a child's welfare). Also, there is no question that the State may intrude upon a family's integrity in the face of allegations that parents are unfit. *Parham v. J.R.,* 442 U.S. 584, 603, 99 S.Ct. 2493, 2504, 61 L.Ed.2d 101 (1979); *see also* TEX. FAM.CODE ANN. §§ 153.131, 161.001 *et seq.* (Vernon 2002).

■ The Grandparent Access Statute allows grandparents to petition for access only under circumstances where the family unit has already, to some degree, been disrupted. A grandparent may request access if the parent is incarcerated, incompetent, or dead; the parents are divorced or living apart; the child is a delinquent or has been abused by its parents; the parent-child relationship has been terminated with one parent; or the child has resided with the grandparents for a statutorily-required length of time. *See* TEX. FAM. CODE ANN. § 153.433(2)(A)-(F). These provisions evidence the Legislature's recognition that cessation of contact with a grandparent may have a dramatic, and even traumatic, effect upon the child's well-being. Under such circumstances the State has a compelling interest in providing a forum for those grandparents having a significant existing relationship with their grandchildren.[3]

■ We therefore consider what parameters would be consistent with the constitutional interest at stake and our Legislature's intent to limit a court's jurisdiction over non-parental intrusion into the parent-child relationship. Because the statute allows only grandparents to petition for access, the jurisdictional prerequisite of standing serves to ensure that the statutory scheme is narrowly tailored so that a parent's personal affairs are not needlessly intruded upon or interrupted by the trauma of litigation by any third party seeking access.[4] However, more than a narrow standing requirement is necessary to satisfy the due process concerns raised in *Troxel.* In acknowledging the changing realities of American families, the *Troxel* Court refused to define the precise scope of the parental due process right in the access context, stating "the constitutionality of any standard for awarding visitation turns on the specific manner in which that standard is applied and ... the constitu-

---

3. The United States Supreme Court has recognized that "the importance of the familial relationship, to the individuals involved and to the society, stems from the emotional attachments that derive from the intimacy of daily association, and from the role it plays in 'promot[ing]' a way of life' through the instruction of children as well as from the fact of blood relationship." *Smith v. Organization of Foster Families for Equality and Reform,* 431 U.S. 816, 843, 97 S.Ct. 2094, 2109 (1977) (citations omitted).

4. Unlike the Washington statute in *Troxel,* the Grandparent Access Statute is not "breathtakingly broad." The Washington statute provided as follows: "Any person may petition the court for visitation rights at any time including, but not limited to, custody proceedings. The court may order visitation rights for any person when visitation may serve the best interest of the child whether or not there has been any change in circumstances."

tional protections in this area are best 'elaborated with care.'" *Troxel*, 530 U.S. at 73, 120 S.Ct. at 2064. The Court did not issue a *per se* holding that non-parental visitation statutes violate the Due Process Clause. *Id.* The underlying logic of abstaining from such a decision was that states, in ruling on the constitutionality of their own non-parental visitation statutes, have made these determinations in the past on a case-by-case basis as the outcome often depends on the application of those statutes. *Id.* Accordingly, the Grandparent Access Statute is constitutional if its application protects parents' fundamental rights under the Due Process Clause. To achieve that goal, we construe the Grandparent Access Statute narrowly and in a manner consistent with the constitutional principles stated in *Troxel*.

As *Troxel* makes clear, the trial court must accord significant weight to a fit parent's decision about the third parties with whom his or her child should associate. Accordingly, we hold that in order to satisfy the "best interest of the child" prong of the Grandparent Access Statute, a grandparent must overcome the presumption that a fit parent acts in the best interest of his or her child. To overcome this presumption, a grandparent has the burden to prove, by a preponderance of the evidence, either that the parent is not fit,[5] or that denial of access by the grandparent would significantly impair the child's physical health or emotional well-being. Our holding that grandparents meet this burden is consistent with other provisions of the Family Code that require a higher degree of proof when a non-parent files a Suit Affecting the Parent–Child Relationship.[6] When interpreted and applied in light of the framework established in *Troxel*, the Grandparent Access Statute is narrowly drawn to serve a compelling state interest and therefore is facially constitutional.

## FITNESS FINDING

Relator asserts that, if the statute is constitutional, there must be a finding that he is unfit before access is granted to Maria. We agree in part. For the reasons stated above, a constitutional application of the Grandparent Access Statute requires the trial court to find either that relator is not fit, or that denial of access by the grandparent would significantly impair the child's physical health or emotional well-being. Here, the trial court did not make any such findings because, in granting ac-

---

5. The *Troxel* Court describes a fit parent as one who "adequately cares" for his or her children. 530 U.S. at 68, 120 S.Ct. at 2061.

6. *See* Tex. Fam.Code Ann. § 102.004(a)(1) (grandparent may file suit requesting managing conservatorship if "child's present environment presents a serious question concerning the child's physical health or welfare"); *Id.* at § 102.004(b) (Vernon 2002) (court may grant grandparent leave to intervene in pending suit if grandparent has "had substantial past contact with child"); *Id.* at § 153.131(a) (parent shall be appointed managing conservator unless appointment "would significantly impair the child's physical health or emotional development"); *Id.* at § 156.102(b)(1) (modification of right to determine child's primary residence requires consideration of whether present environment may endanger child's physical health or significantly impair child's emotional development); *Id.* at § 157.374 (court may render appropriate temporary order if there is a serious immediate question concerning the child's welfare); *Id.* at § 160.608(b)(6), (9) (disruption of relationship and chance of harm to child considered when court is deciding whether to deny motion for order for genetic testing); *Id.* at § 161.001(1) (harm to child's physical or emotional well-being considered when court is deciding whether to terminate parent-child relationship); *Id.* at § 263.307 (harm to child *considered when determining whether* child should be placed with Department of Protective and Regulatory Services).

cess, it did not have the benefit of this court's guidance on applying the statute in light of *Troxel.* Accordingly, the trial court's order must be set aside.[7]

### CONCLUSION

It is regrettable when the personal animosity of one or all of the parties serves only to deprive children of a relationship with their grandparents. It is even more regrettable here where the grandmother serves as an emotional link between the children and their recently deceased mother. However, for the reasons stated above, we conditionally grant the writ. Tex.R.App. P. 52.8(c). The Honorable Pat Boone is ORDERED to vacate his Temporary Orders in Suit Affecting the Parent-child Relationship signed on February 14, 2003. If he does not do so within ten days of this order, we will issue the writ.

---

7. Our resolution of this petition for writ of mandamus should not be interpreted as precluding the trial court from reconsidering Maria's petition for access and granting Maria reasonable access if, after an evidentiary hearing, the trial court makes the requisite finding consistent with this opinion.