# ATTORNEY GENERAL OF TEXAS

## GREG ABBOTT

October 13, 2004

The Honorable Jeff Wentworth
Chair, Senate Jurisprudence Committee
Texas State Senate
Post Office Box 12068
Austin, Texas 78711-2068

Opinion No. GA-0260

Re: Constitutionality of the Texas grandparent access statute, section 153.433, Family Code, in light of the United States Supreme Court's decision in *Troxel v. Granville*, 530 U.S. 57 (2000) (RQ-0215-GA)

Dear Senator Wentworth:

You ask about the constitutionality of the Texas grandparent access statute, section 153.433 of the Family Code, in light of the United States Supreme Court's decision in *Troxel v. Granville*, 530 U.S. 57 (2000).

## I. The Statute

Section 153.433 of the Family Code provides:

> The court shall order reasonable access to a grandchild by a grandparent if:
>
> (1) at the time the relief is requested, at least one biological or adoptive parent of the child has not had that parent's parental rights terminated; and
>
> (2) access is in the best interest of the child, and at least one of the following facts is present:
>
>> (A) the grandparent requesting access to the child is a parent of a parent of the child and that parent of the child has been incarcerated in jail or prison during the three-month period preceding the filing of the petition or has been found by a court to be incompetent or is dead;
>>
>> (B) the parents of the child are divorced or have been living apart for the three-month period preceding filing of the petition or a suit for the dissolution of the parents' marriage is pending;

> (C)  the child has been abused or neglected by a parent of the child;
>
> (D)  the child has been adjudicated to be a child in need of supervision or a delinquent child under Title 3 [ch. 51, Texas Family Code];
>
> (E)  the grandparent requesting access to the child is the parent of a person whose parent-child relationship with the child has been terminated by court order; or
>
> (F)  the child has resided with the grandparent requesting access to the child for at least six months within the 24-month period preceding the filing of the petition.

TEX. FAM. CODE ANN. § 153.433 (Vernon 2002) (footnote omitted).

In 2000, the United States Supreme Court held a Washington grandparent access statute to be unconstitutional on the ground that it contravened the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *See Troxel v. Granville*, 530 U.S. 57 (2000). The Washington statute provided, in pertinent part, that

> [a]ny person may petition the court for visitation rights at any time including, but not limited to, custody proceedings. The court may order visitation rights for any person when visitation may serve the best interest of the child whether or not there has been any change of circumstances.

WASH. REV. CODE ANN. § 26.10.160(3) (West 2004). You note that, although the Court's holding is limited to the application of the Washington statute to the facts of that case, the constitutionality of the Texas statute is now in question. We begin with an analysis of *Troxel v. Granville*.

## II.     *Troxel v. Granville*

The *Troxel* case involved the application of a state statute to a dispute over grandparent visitation rights. "Tommie Granville and Brad Troxel shared a relationship that ended in June 1991. The two never married, but they had two daughters . . . ." *Troxel*, 530 U.S. at 60. After Tommie and Brad separated, Brad lived with his parents and regularly brought his daughters to his parents' home for weekend visitation. Brad committed suicide in May 1993, and although the Troxels initially continued to see their granddaughters on a regular basis, Tommie informed the Troxels in October 1993 that she wished to limit the grandparents' access to one short visit per month. *See id.* at 60-61. The Troxels responded by filing suit in December 1993 to obtain extended visitation rights. At trial, Tommie, rather than opposing all visitations, asked the court to order one day of visitation per month

with no overnight stay. The Troxels requested two weekends of visitation per month and two weeks each summer. *See id.* at 61. The trial court took a middle position, ordering one weekend visitation per month, one week during the summer, and four hours on each of the grandparents' birthdays. *See id.* The trial court based its decision on the "best interest of the children." *Id.* at 62.

The intermediate appellate court reversed the trial court's decision on the basis that the Troxels lacked standing to seek visitation. *See id.* (citing *In re Troxel*, 940 P.2d 698, 700-01 (Wash. Ct. App. 1997)). The Supreme Court of Washington disagreed with the appellate court on the standing issue, but held that under the federal constitution the Washington statute "unconstitutionally infringes on the fundamental right of parents to rear their children." *Id.* at 63 (citing *In re Smith*, 969 P.2d 21, 27-30 (Wash. 1998)). The United States Supreme Court granted certiorari, specifically to determine whether the Washington visitation "violates the federal constitution." *Id.* at 65.

Justice O'Connor, in a plurality opinion joined by three other justices, first affirmed that "[t]he liberty interest at issue in this case – the interest of parents in the care, custody, and control of their children – is perhaps the oldest of the fundamental liberty interests recognized by this Court." *Id.* The opinion then reviewed the statute in question, noting in particular the following language, which Justice O'Connor described as "breathtakingly broad": "'*[a]ny person* may petition the court for visitation rights *at any time*,' and the court may grant such visitation rights whenever 'visitation may serve *the best interest of the child*.'" *Id.* at 67 (citing WASH. REV. CODE ANN. § 26.10.160(3)). The opinion noted that this language

> effectively permits any third party seeking visitation to subject any decision by a parent concerning visitation of the parent's children to state-court review. Once the visitation petition has been filed in court and the matter is placed before a judge, a parent's decision that visitation would not be in the child's best interest is accorded no deference. Section 26.10.160(3) contains no requirement that a court accord a parent's decision any presumption of validity or any weight whatsoever. Instead, the Washington statute places the best-interest determination solely in the hands of the judge. Should the judge disagree with the parent's estimation of the child's best interests, the judge's view necessarily prevails. Thus, in practical effect, in the State of Washington a court can disregard and overturn *any* decision by a fit custodial parent concerning visitation whenever a third party affected by the decision files a visitation petition, based solely on the judge's determination of the child's best interests. The Washington Supreme Court had the opportunity to give § 26.10.160(3) a narrower reading, but it declined to do so.

*Id.*

Justice O'Connor observed that "[t]he problem here is not that the Washington Superior Court intervened, but that when it did so, it gave no special weight at all to Granville's determination of her daughters' best interests." *Id.* at 69. Moreover, "the judge placed on Granville, the fit custodial parent, the burden of *disproving* that visitation would be in the best interest of her

daughters." *Id.* As a result, "the court's presumption failed to provide any protection for Granville's fundamental constitutional right to make decisions concerning the rearing of her own daughters." *Id.* at 69-70. Furthermore, the court observed, there existed no evidence that Tommie Granville "ever sought to cut off visitation entirely." *Id.* at 71. The trial court "gave no weight to Granville's having assented to visitation even before the filing of any visitation petition or subsequent court intervention." *Id.*

Justice O'Connor concluded that

> the combination of these factors demonstrates that the visitation order in this case was an unconstitutional infringement on Granville's fundamental right to make decisions concerning the care, custody, and control of her two daughters. The Washington Superior Court failed to accord the determination of Granville, a fit custodial parent, any material weight. In fact, the Superior Court made only two formal findings in support of its visitation order. First, the Troxels "are part of a large, central, loving family, all located in this area, and the [Troxels] can provide opportunities for the children in the area of cousins and music." . . . Second, "[t]he children would be benefited from spending quality time with the [Troxels], provided that that time is balanced with time with the childrens' *[sic]* nuclear family." . . . These slender findings, in combination with the court's announced presumption in favor of grandparent visitation and its failure to accord significant weight to Granville's already having offered meaningful visitation to the Troxels, show that this case involves nothing more than a simple disagreement between the Washington Superior Court and Granville concerning her children's best interests.

*Id.* at 72. But the plurality added a caveat:

> Because we rest our decision on the sweeping breadth of § 26.10.060(3) and the application of that broad, unlimited power in this case, we do not consider the primary constitutional question passed on by the Washington Supreme Court – whether the Due Process Clause requires all nonparental visitation statutes to include a showing of harm or potential harm to the child as a condition precedent to granting visitation. We do not, and need not, define today the precise scope of the parental due process right in the visitation context. . . . Because much state-court adjudication in this context occurs on a case-by-case basis, we would be hesitant to hold that specific nonparental visitation statutes violate the Due Process Clause as a *per se* matter.

*Id.* at 73.

The message of *Troxel* may thus be summarized: state statutes that infringe upon a parent's right to control the care and custody of his or her children are subject to strict scrutiny. *See In re Pensom*, 126 S.W.3d 251, 254 (Tex. App.–San Antonio 2003, no pet.). A court may not, in visitation cases, substitute its own judgment in such a way as to infringe upon this fundamental liberty. The Washington statute is deficient *per se* on grounds of overbreadth, and its application to the facts of *Troxel* indicate a deficiency in its overall structure. Nevertheless, while any particular nonparental visitation statute may not as a matter of law violate the Fourteenth Amendment, the ultimate determination of any visitation statute's constitutionality requires a fact-intensive case-by-case analysis.

## III.   The Texas Cases

At least seven Texas appellate cases since *Troxel* have addressed the constitutionality of section 153.433 of the Family Code. None of them have concluded that that provision is facially unconstitutional.

### A.   *Clark v. Funk*

The first decision, *Clark v. Funk*, No. 08-97-00634-CV, 2000 WL 1203942 (Tex. App.–El Paso Aug. 24, 2000, no pet.) (not designated for publication), was issued less than three months after the Supreme Court's decision in *Troxel*. Although *Clark* involved a conservatorship battle, the trial court had ruled that, if the divorced parents were unable to agree about their rights under the joint managing conservatorship, the paternal grandparents would make the final decision. *Id.* at *3. The court, in referring to the recent *Troxel* decision, noted that

> [t]he Texas statute . . . is, unlike the Washington visitation statute . . . very limited in its application and does not simply depend upon a best interest of the child finding . . . and again . . . the record before us clearly reflects that the trial court's order was based, not merely on its singular determination of the best-interest question, but was firmly grounded upon special factors that justify the imposition of a tie breaking role for the grandparents that imposes a limited restriction of both parents' fundamental right to make decisions concerning the raising of their children.

*Id.* at *4.

### B.   *Lilley v. Lilley*

The next Texas case to reach the appellate level, *Lilley v. Lilley*, 43 S.W.3d 703 (Tex. App.–Austin 2001, no pet.), involved facts remarkably similar to those of *Troxel*, in that the paternal grandfather sought scheduled visitation with his granddaughter after the girl's father had committed suicide. Unlike the situation in *Troxel*, the Lilleys had been married but had subsequently divorced. Like Tommie Granville, however, Wendy Lilley asserted that the trial court's order granting access to her former father-in-law infringed on her fundamental right to make child-rearing decisions. The

trial court awarded visitation rights to William Lilley, the paternal grandfather, and the court of appeals affirmed.

The court of appeals first distinguished the Texas statute from the Washington statute held invalid in *Troxel*. According to the court, section 153.433 of the Family Code is not, unlike the Washington statute, "breathtakingly broad." *Id.* at 712. Rather, it "allows only grandparents, under particular circumstances, to petition for access to a child, provided it is in the child's best interest." *Id.* Thus, section 153.433 is sufficiently distinguishable from the Washington statute that it cannot be said to be unconstitutional on its face. *Id.* at 713. Furthermore, the court found, the statute had not been unconstitutionally applied to the facts at issue. The trial court, unlike the trial court in *Troxel*, did not place on Wendy Lilley the burden of proving that her daughter would be harmed by visitation with her grandfather. The Lilleys had themselves "sought the State's intervention into their family's relationships when they filed to dissolve their marriage." *Id.* at 712. Most significantly, Wendy Lilley had, unlike Tommie Granville, "taken inconsistent positions" about the grandfather's access to her daughter. *Id.* at 713. The court of appeals concluded that "[t]he district court balanced Wendy's varying positions and rights" as a mother with the grandfather's "request for visitation and the child's interest in having a continuing relationship with her deceased father's family." *Id.*

### C.     *Sailor v. Phillips*

In *Sailor v. Phillips*, No. 03-00-00725-CV, 2001 WL 1379923 (Tex. App.–Austin Nov. 8, 2001, no pet.) (not designated for publication), the court of appeals affirmed its holding in *Lilley* that section 153.433 is facially constitutional, noting that it "defines certain circumstances when grandparent [visitation] may be ordered if it is in the children's best interest." *Id.* at *4. Moreover, the mother in *Sailor* had severed all contact between her children and her former mother-in-law, even blocking "a final visit or even telephone contact with the boys' terminally ill grandfather when they were ages twelve and fourteen." *Id.* at *5. Under these circumstances, the court of appeals affirmed the trial court's order allowing the children to visit their grandmother.

### D.     *Roby v. Adams*

The fourth case, *Roby v. Adams*, 68 S.W.3d 822 (Tex. App.–El Paso 2002, pet. denied), is one of only two post-*Troxel* Texas cases to deny visitation rights to grandparents. The court did not reach the issue of the facial constitutionality of section 153.433. Rather, it emphasized that portion of *Troxel* requiring that "special weight" be accorded a fit parent's determination about visitation. *Id.* at 827. On the basis of the facts presented at trial, the court of appeals found that the trial court was not justified in "finding that granting grandparent access would be in the best interest of the Roby children, against Roby's decision as a parent." *Id.* at 827. The court distinguished the facts before it from those in *Lilley*, on the ground that

> Roby never declared it would be in the best interest of his children to allow the Adams['] access to the children and Roby was consistent in his position on the Adams' access to them. Furthermore, the holding in *Lilley* appears to place the burden of persuasion upon the parent to

> prove the best interest of the child. This goes against the presumption so strongly enunciated in *Troxel*, that a fit parent acts in the best interest of his or her child. A grandparent seeking access under TEX. FAM. CODE ANN. § 153.433 has the burden to overcome the presumption that a fit parent acts in the best interest of the parent's child in order to establish the "best interest of the child" prong of the statute.

*Id.* at 828. This language evidences a fundamental disagreement between the Austin and El Paso Courts of Appeal on the application of the *Troxel* standard to section 153.433. *Roby* in no way, however, questions the facial constitutionality of the Texas statute.

### E.    *In re Marriage of Black*

After an interval of more than a year, yet another Texas appellate court entered the fray regarding *Troxel* and its application to Texas law. In *In re Marriage of Black*, No. 07-02-0317-CV, 2003 WL 397799 (Tex. App.–Amarillo Feb. 21, 2003, no pet.) (mem. op.), Crystal Dawn Black appealed a trial court decision awarding, as part of a divorce decree, grandparent access to her child. Ms. Black raised on appeal for the first time the issue of the constitutionality of section 153.433. The court of appeals, although holding that the issue of constitutionality could not be raised for the first time on appeal, approvingly quoted the court's language in *Lilley*. *See id.* at *2.

### F.    *In re C.P.J. and S.B.J.*

In the last two cases, both from 2003, the Dallas and San Antonio Courts of Appeal have struck a balance between what might be considered the two approaches previously taken by the Texas appellate courts: the embracing standard of *Lilley* and the narrower test applied in *Roby*.

In the case of *In re C.P.J. and S.B.J.*, 129 S.W.3d 573 (Tex. App.–Dallas 2003, pet. denied), Marshall Jackson had married Stephanie Adams in May 1989, a union that produced two daughters. Stephanie died in October 1994, and until May 1997, Stephanie's parents, Ronnie and Cheryl Adams, cared for the children during the daytime hours while their father worked. *Id.* at 573-74. In July 1997, the Adamses filed a petition for grandparent access, and after mediation, the parties agreed on a schedule of regular visits, which schedule was approved by the trial court. In October 2000, Jackson filed a petition to modify the Adamses' visitation order in light of the *Troxel* decision. In September 2002, the trial court denied Jackson's request to terminate visitation, but modified the visitation schedule to reduce the time the children spent with the Adamses. Jackson appealed, citing *Troxel* for the proposition that section 153.433 is unconstitutional. *See id.* at 576.

The court's analysis focused primarily on the argument that section 153.433 is unconstitutional on its face. The court noted initially that the "holding in *Troxel* is clearly limited to the application of the Washington statute to the facts of that case. Accordingly, we cannot apply *Troxel* as a sweeping indictment of all non-parental visitation statutes in general or as to the Texas statute in particular. Further, the United States Supreme Court expressly declined to define the precise scope of the parental due process right in the visitation context." *Id.* at 576-77. The court then discussed the different approaches taken by the courts in *Lilley* and *Roby*:

> Several Texas courts have addressed the grandparent visitation statute since the *Troxel* decision was delivered. However, no decision has directly held that the statute is unconstitutional. In *Lilley v. Lilley*, . . . the court held specifically that section 153.433 is "not unconstitutional on its face or in the district court's application to the facts at hand." . . . Differing somewhat with the *Lilley* holding, the El Paso court of appeals, in *Roby v. Adams* . . . stated that it was "[h]eeding the holding in *Troxel*," but it did *not* declare the statute to be unconstitutional either facially or as applied. . . . Instead, the El Paso court engrafted upon the statute a presumption that the parent is fit, that a fit parent is presumed to act in the best interests of the child, and that without a finding of parental unfitness, no grandparent visitation can be allowed over the parent's objection.

*Id.* at 577 (citations omitted). The court then presented its own resolution of these two cases:

> Because these cases dealing with a challenge of section 153.433 were narrowly decided under the facts before the respective courts, we view them as describing a path under those facts. They are not controlling in the case we now consider. However, we are mindful that the court in *Lilley* resolved against the appellant an attack on the facial constitutionality of the statute.

*Id.* at 577-78.

In reconciling these varying standards with the case before it, the court of appeals first declined "to take the position that the statute is facially unconstitutional." *Id.* at 578. In applying the *Troxel* standard to the circumstances presented, the court found that "there are at least several pivotal facts which show that the trial court did not deny due process to Jackson respecting his parental rights. First, Jackson agreed to the 1999 visitation order, which specifically found that visitation was in the 'best interests of the children.' . . . By reducing the visitation schedule and excluding Sunday visitation, the trial court's judgment plainly resolved any . . . conflict. Further, Jackson testified that he was not refusing visitation by the Adamses." *Id.* Finally, the court concluded that "the relief ordered by the trial court respecting Jackson's motion and the application of the grandparent access statute to Jackson does not violate his due process rights as described in *Troxel*. It is apparent that the trial court was able to craft its decision by according 'at least some special weight to the parent's own determination.'" *Id.* at 579.

## G.    *In re Pensom*

The final Texas appellate decision thus far, *In re Pensom*, 126 S.W.3d 251 (Tex. App.–San Antonio 2003, no pet.), issued less than a year ago, takes, like *In re C.P.J.*, a balanced and reflective approach to the question of the facial unconstitutionality of section 153.433, and its application to particular circumstances. In that case, Keith Pensom and his wife, Melanie, had been divorced and granted joint managing conservatorship of their two children. After Melanie's death,

her mother and stepfather, Maria and James Weaver, filed a petition to be appointed temporary sole managing conservators, or alternatively, to be granted reasonable access to the children. The trial court entered temporary orders granting access to Maria Weaver. Keith Pensom then filed a mandamus action, alleging first, that section 153.433 is unconstitutional on its face, and, in the alternative, that "the trial court abused its discretion in granting Maria access because it did not find him to be an unfit parent." *Id.* at 254.

The court of appeals noted first that the parental interest in the care, custody, and control of their children is "a fundamental right protected by the Due Process Clause of the Fourteenth Amendment to the United States Constitution," and as a result, a "strict scrutiny" test must be applied. *Id.* at 254. The court then summarized the Texas grandparent access statute as follows:

> The Grandparent Access Statute allows grandparents to petition for access only under circumstances where the family unit has already, to some degree, been disrupted. A grandparent may request access if the parent is incarcerated, incompetent, or dead; the parents are divorced or living apart; the child is a delinquent or has been abused by its parents; the parent-child relationship has been terminated with one parent; or the child has resided with the grandparents for a statutorily-required length of time. . . . These provisions evidence the Legislature's recognition that cessation of contact with a grandparent may have a dramatic, and even traumatic, effect upon the child's well-being. Under such circumstances the State has a compelling interest in providing a forum for those grandparents having a significant existing relationship with their grandchildren.

*Id.* at 255 (citation and footnote omitted). The court continued:

> Because the statute allows only grandparents to petition for access, the jurisdictional prerequisite of standing serves to ensure that the statutory scheme is narrowly tailored so that a parent's personal affairs are not needlessly intruded upon or interrupted by the trauma of litigation by any third party seeking access. However, more than a narrow standing requirement is necessary to satisfy the due process concerns raised in *Troxel.* . . . [T]he *Troxel* court refused to define the precise scope of the parental due process right in the access context . . . . The Court did not issue a *per se* holding that non-parental visitation statutes violate the Due Process Clause. The underlying logic of abstaining from such a decision was that states, in ruling on the constitutionality of their own non-parental visitation statutes, have made these determinations in the past on a case-by-case basis . . . . Accordingly, the Grandparent Access Statute is constitutional if its application protects parents' fundamental rights under the Due Process Clause. *To achieve that goal, we construe the*

> *Grandparent Access Statute narrowly and in a manner consistent*
> *with the constitutional principles stated in Troxel.*

*Id.* at 255-56 (emphasis added) (citations and footnote omitted).

The *Pensom* court thus reached the heart of the matter of the facial constitutionality of section 153.433: how to construe that provision in a manner consistent with *Troxel.* To do so, the court required that section 153.433 be construed narrowly. The court then spelled out exactly how a narrow construction of the statute would read:

> *[I]n order to satisfy the "best interest of the child" prong of the*
> *Grandparent Access Statute, a grandparent must overcome the*
> *presumption that a fit parent acts in the best interest of his or her*
> *child. To overcome this presumption, a grandparent has the burden*
> *to prove, by a preponderance of the evidence, either that the parent*
> *is not fit, or that denial of access by the grandparent would*
> *significantly impair the child's physical health or emotional well-*
> *being.* Our holding that grandparents meet this burden is consistent
> with other provisions of the Family Code that require a higher degree
> of proof when a non-parent files a Suit Affecting the Parent-Child
> Relationship. When interpreted and applied in light of the framework
> established in *Troxel,* the Grandparent Access Statute is narrowly
> drawn to serve a compelling state interest and therefore is facially
> constitutional.

*Id.* at 256 (emphasis added) (footnotes omitted). In applying this standard to the facts at hand, the court of appeals held that "a constitutional application of the Grandparent Access Statute requires the trial court to find either that relator is not fit, or that denial of access by the grandparent would significantly impair the child's physical health or emotional well-being. Here, the trial court did not make any such findings because, in granting access, it did not have the benefit of this court's guidance on applying the statute in light of *Troxel." See id.* at 256-57. As a result, the court of appeals set aside the trial court's order granting Maria Weaver access to her two grandchildren.

## IV.     Analysis and Conclusion

More than four years have elapsed since the United States Supreme Court's decision in *Troxel.* Seven intermediate Texas appellate courts have attempted to formulate a test for applying the *Troxel* standard to section 153.433 of the Family Code. Each court that has considered the issue has held that provision to be constitutional on its face. Like those courts, we must begin with the presumption that the legislative enactment is constitutional. *See Gen. Servs. Comm'n v. Little-Tex Insulation Co., Inc.,* 39 S.W.3d 591, 598 (Tex. 2001). A facial invalidation of a statute is appropriate only if it can be shown that under no circumstances can the statute be constitutionally applied. *See United States v. Salerno,* 481 U.S. 739, 745 (1987). On the basis of this presumption of constitutionality, the holding of these Texas appellate cases, and on the clearly limiting language of *Troxel,* we conclude that section 153.433 is facially constitutional.

The Texas appellate cases have traced an arc from the relative permissiveness of *Lilley* to the strict standard of *Roby* and on to the more subtle analyses of *In re C.P.J.* and *In re Pensom*. Each of these decisions was of course circumscribed by its particular facts, but in our view, the latter two cases, and especially *In re Pensom*, reflect a reasoned and thoughtful attempt to harmonize section 153.433 of the Family Code with the Supreme Court's standard in *Troxel*. Thus, while section 153.433 is facially constitutional, it may, under particular circumstances, be unconstitutionally applied. In order to avoid an unconstitutional application of the statute, a court must require a grandparent to "overcome the presumption that a fit parent acts in the best interest of his or her child." *In re Pensom*, 126 S.W.3d at 256. To overcome the presumption, "a grandparent has the burden to prove, by a preponderance of the evidence, either that the parent is not fit, or that denial of access by the grandparent would significantly impair the child's physical health or emotional well-being." *Id.* Such an approach has the virtue both of adopting the test of the most recent Texas appellate case on the matter in question, and of most closely complying with the caveats imposed by *Troxel*. We conclude therefore that section 153.433 is facially constitutional, but is constitutional in application only if construed in light of the limitations imposed by *Troxel*.

## S U M M A R Y

Section 153.433 of the Family Code, the Texas Grandparent Access Statute, is constitutional on its face. It may be constitutionally applied, however, only in light of the limitations imposed by *Troxel v. Granville*, 530 U.S. 57 (2000). In order to avoid an unconstitutional application of the statute, a court must require a grandparent to "overcome the presumption that a fit parent acts in the best interest of his or her child." *In re Pensom*, 126 S.W.3d 251, 256 (Tex. App.–San Antonio 2003, no pet.). To overcome the presumption, "a grandparent has the burden to prove, by a preponderance of the evidence, either that the parent is not fit, or that denial of access by the grandparent would significantly impair the child's physical health or emotional well-being." *Id.* at 256.

Very truly yours,

GREG ABBOTT
Attorney General of Texas

BARRY R. MCBEE
First Assistant Attorney General

DON R. WILLETT
Deputy Attorney General for Legal Counsel

NANCY S. FULLER
Chair, Opinion Committee

Rick Gilpin
Assistant Attorney General, Opinion Committee