

IN THE
TENTH COURT OF APPEALS

No. 10-24-00177-CV

IN THE INTEREST OF A.J.R.B., A CHILD

From the 474th District Court
McLennan County, Texas
Trial Court No. 2023-1787-6

MEMORANDUM OPINION

R.H.V. ("Grandmother"), the maternal grandmother of A.J.R.B., appeals the trial court's final order of termination in which the court denied all relief requested in Grandmother's "Intervention and Petition to Modify Temporary Orders."[1] In two issues, Grandmother asserts that the trial court abused its discretion in denying her court-ordered access to A.J.R.B. and argues that the denial of access was not in the child's best interest. The Department of Family and Protective Services ("the Department") asserts that Grandmother did not have standing to intervene. We affirm the judgment of the trial court.

---

[1] The trial court also terminated Mother's parental rights to A.J.R.B., but Mother does not appeal.

## Background

The Department received a referral regarding Mother's alleged physical abuse and neglectful supervision of A.J.R.B. No concerns or referrals were made regarding any potential abuse or neglect from Father, who did not reside with Mother or the child. On July 14, 2023, the Department filed its original petition for conservatorship and termination of Mother's and Father's parental rights to A.J.R.B. The trial court signed an order naming the Department the temporary sole managing conservator of the child on the same day.

On August 15, 2023, after a full adversary hearing, A.J.R.B. was removed from Grandmother's home – where she had been living with Grandmother since birth – and was placed with Father on a monitored return. *See* TEX. FAM. CODE ANN. § 263.403. On October 6, 2023, Grandmother reported suspected physical abuse of A.J.R.B. by Father after observing marks on A.J.R.B.'s legs during a visit. On December 5, 2023, Grandmother intervened in the Department's suit, seeking appointment as A.J.R.B.'s managing conservator and requesting both Mother and Father be appointed as possessory conservators.

After a final hearing and entry of a final order by an associate judge, Grandmother filed a request for a *de novo* hearing. Following the *de novo* hearing, the trial court entered an order terminating Mother's parental rights to A.J.R.B., appointing Father as sole

managing conservator of A.J.R.B., and denying Grandmother's requested relief. This appeal followed.

## Standing

As a threshold issue, the Department argues that we must dismiss Grandmother's appeal and affirm the judgment of the trial court because Grandmother failed to establish standing to intervene in the Department's suit under all three grounds alleged in her intervention petition. We disagree.

STANDARD OF REVIEW

Standing is a component of subject-matter jurisdiction; as such, we must ascertain whether standing exists in order to determine our authority to decide the merits of the parties' claims. *See In re H.S.*, 550 S.W.3d 151, 155 (Tex. 2018). Whether a party has standing to maintain a suit is a question of law that we review *de novo* and may be raised for the first time on appeal. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 445-46 (Tex. 1993); *In re T.H.*, 650 S.W.3d 224, 235 (Tex. App.—Fort Worth 2021, no pet.). As a general rule, an individual's standing to intervene is commensurate with that individual's standing to file an original suit. *See In re A.C.*, Nos. 10-15-00192-CV, 10-15-00193-CV, 2015 Tex. App. LEXIS 10882, 2015 WL 6437843, at *26 (Tex. App.—Waco Oct. 22, 2015, no pet.) (mem. op.); *see also In re S.B.*, No. 02-11-00081-CV, 2011 Tex. App. LEXIS 1836, 2011 WL 856963, at *9-10 (Tex. App.—Fort Worth Mar. 11, 2011, orig. proceeding). A party seeking relief in a suit affecting the parent-child relationship must plead and

establish standing within the parameters of the language used in the relevant statute. *In re Torres*, 614 S.W.3d 798, 801 (Tex. App.—Waco 2020, no pet.). Our standing analysis begins with the live pleadings, but we may consider relevant evidence of jurisdictional facts when necessary to resolve the jurisdictional issue raised. *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 555 (Tex. 2000).

When the trial court does not make separate findings of fact and conclusions of law on the issue of standing, "we imply the findings necessary to support the judgment…[and] review the entire record to determine if the trial court's implied findings are supported by any evidence." *In re S.M.D.*, 329 S.W.3d 8, 13 (Tex. App.—San Antonio 2010, pet. dism'd).

DISCUSSION

In her pleading, Grandmother cited to Sections 102.003(a)(9), 102.003(a)(11), and 102.004(a)(1) of the Family Code as grounds for her standing to intervene in the Department's pending suit and to seek appointment as A.J.R.B.'s managing conservator. *See* TEX. FAM. CODE ANN. §§ 102.003(a)(9), 102.003(a)(11), 102.004(a)(1). The trial court did not make findings of fact or conclusions of law regarding standing; however, by permitting Grandmother to participate in the proceedings as an intervenor, the trial court

impliedly found that Grandmother had standing under at least one of these three grounds.[2]

As applicable here, Section 102.004 of the Family Code, entitled "Standing for Grandparent or Other Person," provides, in part:

> (a) In addition to the general standing to file suit provided by Section 102.003, a grandparent, or another relative of the child related within the third degree by consanguinity, may file an original suit requesting managing conservatorship if there is satisfactory proof to the court that:
>
> (1) the order requested is necessary because the child's present circumstances would significantly impair the child's physical health or emotional development[.]

*Id.* at § 102.004(a)(1). Under this subsection, the petitioner must show "satisfactory proof" by a preponderance of the evidence, as the facts existed at the time the intervention petition was filed, that continuation of the child's present circumstances would significantly impair her physical health or emotional development. *See In re G.D.L.*, No. 10-23-00011-CV, 2023 Tex. App. LEXIS 6798, 2023 WL 5624064, at *5-6 (Tex. App.—Waco Aug. 30, 2023, no pet.) (mem. op.) (citing *Compton v. Pfannenstiel*, 428 S.W.3d 881, 885 (Tex. App.—Houston [1st Dist.] 2014, no pet.)).

At the time Grandmother filed her petition on December 5, 2023, A.J.R.B.'s "present circumstances" were that she had been living with Father on a monitored return

---

[2] We note that Grandmother only briefly mentions standing on appeal, citing only to Section 102.004(a)(1) of the Family Code and stating that standing was not challenged in the trial court. *See* TEX. FAM. CODE ANN. § 102.004(a)(1). Grandmother did not file a reply brief to address the Department's argument that she lacks standing.

basis for over three months.  Grandmother states in her petition that "the child is being abused by the father and that CPS has not taken sufficient steps to protect the child."  To support her assertion of standing under this ground, Grandmother attached an affidavit to her petition.  In the affidavit, Grandmother attests, "I believe my granddaughter is being abused by her father.  Attached to this affidavit is a copy of the file with the police wherein I raised the issue of abuse."  The attached police report from October 6, 2023 details Grandmother's contact with law enforcement after she observed red marks on A.J.R.B.'s legs and claimed that she was told by A.J.R.B. that Father hits her every day.

Physical abuse by the child's custodian can establish "significant impairment" as contemplated by the statute.  *See Rolle v. Hardy*, 527 S.W.3d 405, 420 (Tex. App.—Houston [1st Dist.] 2017, no pet.) (citing *In re L.D.F.*, 445 S.W.3d 823, 830 (Tex. App.—El Paso 2014, no pet.)).  While we recognize that the Department "ruled out" the reported physical abuse allegation and that law enforcement ultimately did not pursue criminal charges against Father, the decisions made by these agencies do not preclude the trial court from considering the allegation.  *See Medrano v. Zapata*, No. 03-12-00131-CV, 2013 Tex. App. LEXIS 15452, 2013 WL 6921500, at *26 (Tex. App.—Austin Dec. 31, 2013, no pet.) (mem. op.); *In re M.P.*, No. 13-21-00013-CV,  2022 Tex. App. LEXIS 3408, 2022 WL 1572267, at *10 (Tex. App.—Corpus Christi—Edinburg May 19, 2022, no pet.) (mem. op.).  The question of standing is not whether the individual will ultimately prevail in her suit; rather, it is about whether she had the right to bring suit in the first place.  *See In re H.S.*, 550 S.W.3d

at 155. When viewed according to the appropriate standard, the record supports the trial court's implied conclusion that Grandmother had standing to file her petition seeking managing conservatorship of A.J.R.B under Section 102.004(a)(1). *See* TEX. FAM. CODE ANN. § 102.004(a)(1).

## Denial of Possession or Access

In her first and second issues on appeal, Grandmother asserts that the trial court abused its discretion in denying her court-ordered access to A.J.R.B. and claims that the denial of access was not in the child's best interest. *See id.* at §§ 153.432, 153.433. We disagree.

STANDARD OF REVIEW AND RELEVANT LAW

Grandmother's first issue on appeal is grounded in Section 153.433 of the Family Code, which permits a biological or adoptive grandparent to seek reasonable possession of or access to their grandchild over the objection of the custodial parent if:

(1) at the time the relief is requested, at least one biological or adoptive parent of the child has not had that parent's parental rights terminated;
(2) the grandparent requesting possession of or access to the child overcomes the presumption that a parent acts in the best interest of the parent's child by proving by a preponderance of the evidence that denial of possession of or access to the child would significantly impair the child's physical health or emotional well-being; and
(3) the grandparent requesting possession of or access to the child is a parent of a parent of the child and that parent of the child:
   (A) has been incarcerated in jail or prison during the three-month period preceding the filing of the petition;
   (B) has been found by a court to be incompetent;
   (C) is dead; or

(D) does not have actual or court-ordered possession of or access to the child.

*Id*. at § 153.433(a).

We review a trial court's decision to grant or deny a grandparent's request for access to their grandchild for an abuse of discretion. *In re Chambless*, 257 S.W.3d 698, 699 (Tex. 2008). A trial court abuses its discretion if it acts arbitrarily, unreasonably, or without reference to any guiding rules or principles. *In re H.D.C.*, 474 S.W.3d 758, 763 (Tex. App.—Houston [14th Dist.] 2014, no pet.). In evaluating the trial court's exercise of discretion, we defer to the trial court's resolution of underlying facts and credibility determinations, and we do not substitute our own judgment in its place. *In re Vogel*, 261 S.W.3d 917, 925 (Tex. App.—Houston [14th Dist.] 2008, orig. proceeding).

DISCUSSION

On appeal, the parties contest only whether Grandmother overcame the presumption that a parent acts in the best interest of his child by proving by a preponderance of the evidence that denial of access to the child would significantly impair the child's physical health or emotional well-being.[3] *See* TEX. FAM. CODE ANN. § 153.433(a)(2).

---

[3] Section 153.433 of the Family Code does not apply to a grandparent's lawsuit seeking conservatorship of a grandchild, as Grandmother specifically sought in her pleadings in this case. *See In re J.R.W.*, No. 05-15-01479-CV, 2017 Tex. App. LEXIS 6831, 2017 WL 3083930, at *10 (Tex. App.—Dallas July 20, 2017, pet. denied) (mem. op.); *In re Huff*, 10-23-00216-CV, 2023 Tex. App. LEXIS 8174, 2023 WL 7039650, at *5-6 (Tex. App.—Waco Oct. 26, 2023, no pet.) (mem. op.) (explaining that standing pursuant to Section 102.004(a)(1) does not apply to proceedings seeking possession and access to a child). Grandmother did not plead for possession or access under Sections 153.432 and 153.433 in her petition. *See* TEX. FAM. CODE ANN. §§ 153.432, 153.433.

<u>Fit-Parent Presumption</u>

The law recognizes a presumption that a "fit parent" acts in the best interest of his children. *See Troxel v. Granville*, 530 U.S. 57, 120 S. Ct. 2054, 147 L.Ed.2d 49 (2000); *In re C.J.C.*, 603 S.W.3d 804, 807-08 (Tex. 2020). This fit-parent presumption is incorporated into the grandparent-access statute. *See* TEX. FAM. CODE ANN. § 153.433(a)(2); *In re E.R.D.*, 671 S.W.3d 682, 687 (Tex. App.—Eastland 2023, no pet.). To overcome the fit-parent presumption, "a grandparent has the burden to prove, by a preponderance of the evidence, either that the parent is not fit, or that denial of access by the grandparent would significantly impair the child's physical health or emotional well-being." *In re Pensom*, 126 S.W.3d 251, 256 (Tex. App.—San Antonio 2003, no pet.). A "fit parent" has been defined as a parent who "adequately cares for his or her children." *In re Mays-Hooper*, 189 S.W.3d 777, 778 (Tex. 2006) (quoting *Troxel*, 530 U.S. at 68). Evidence of past misconduct alone is insufficient to show a parent's present unfitness. *Critz v. Critz*, 297 S.W.3d 464, 475 (Tex. App.—Fort Worth 2009, no pet.). "If the parent is presently a suitable person to have custody, the fact that there was a time in the past when the parent would not have been a proper person to have such custody is not controlling." *Id.* (citing

---

However, the issue of grandparent access may be tried by consent, and a request for conservatorship has been found to necessarily encompass a lesser request for possession or access. *See In re C.J.C.*, 603 S.W.3d 804, 823 n.2 (Tex. 2020) (Lehrmann, J., concurring) (citing *Shook v. Gray*, 381 S.W.3d 540, 543 (Tex. 2012)); *In re W.M.*, 172 S.W.3d 718, 728 (Tex. App.—Fort Worth 2005, no pet.). The reporter's record reveals that Grandmother requested court-ordered access to A.J.R.B. as an alternative to being appointed as managing conservator and that the parties tried the issue.

*May v. May*, 829 S.W.2d 373, 377 (Tex. App.—Corpus Christi 1992, writ denied.) (op. on reh'g)).

Grandmother first argues that Father "should not enjoy the fit[-]parent presumption" that he acts in the best interest of his child, implying that Father does not qualify as a "fit parent." In support of her position, Grandmother points to the following: (1) Father was minimally involved with A.J.R.B. for the first several years of her life, (2) Father's mental health, (3) Father's prior history with the Department, (4) that the Department's search for Father's criminal history only dated back to the year 2020, (5) that A.J.R.B. appeared to Grandmother to be sad and quiet, and (6) that A.J.R.B. reported to Grandmother that Father was physically abusing her.

We note that Grandmother does not challenge on appeal the propriety of the trial court's order appointing Father as sole managing conservator of A.J.R.B.. A parent cannot simultaneously be appropriately appointed as sole managing conservator of a child and be an "unfit parent" who is incapable of adequately caring for the child. *See In re N.H.*, 652 S.W.3d 488, 495 (Tex. App.—Houston [14th Dist.] 2022, pet. denied) (finding an abuse of discretion where the trial court appointed the parent as sole managing conservator but also found the parent was unfit). Further, when asked by child's attorney ad litem, "Do you think the Judge made a mistake placing the child with her father[,]" Grandmother responded, "No." Nonetheless, we conclude that Grandmother's listed concerns fail to

meet her burden to show that Father is an unfit parent who should not enjoy the fit-parent presumption.

At the time of the *de novo* hearing, A.J.R.B. had been living with Father on a monitored return for several months. During the monitored return, the Department visited Father's home according to the following schedule: weekly unannounced visits to the home for the first two months, every other week for the following two months, and once per month for the final two months of the process. The monitored return was never terminated, indicating there were no concerns with Father's ability to adequately provide for A.J.R.B.. Further, the trial court heard testimony from witnesses who interacted with A.J.R.B. that she appeared happy with her present circumstances and was making significant strides in her education and extracurricular activities since her placement with Father.

Regarding Father's mental health, Father completed a psychological examination resulting in no issues or concerns necessitating termination of the monitored return or additional required services, and the trial court heard testimony that Father's post-traumatic stress disorder diagnosis did not have any bearing on his ability to parent A.J.R.B.. As to the alleged physical abuse, the trial court heard Grandmother's testimony about the origin of the injury on A.J.R.B.'s legs and that A.J.R.B. told Grandmother that Father hits her daily. However, both Father and A.J.R.B. reported that A.J.R.B. sustained the complained-of injury to her legs when she fell at a basketball game. The trial court

heard testimony that despite coming into contact with multiple mandatory reporters throughout the duration of this case, A.J.R.B. did not report physical abuse by Father to any of them. The Department investigated and ruled out the physical abuse allegation, and no criminal charges were pursued against Father.

Additionally, Father explained that despite consistently paying child support for A.J.R.B., the maternal family – including Grandmother – would refuse access or require additional financial payment from Father to have a visit with A.J.R.B. Further, the Department had ruled out all of Father's previous allegations with their agency, and Grandmother points to no evidence indicating that Father had criminal history that would have been revealed by a broader criminal history search or how such history, if any, might impact his fitness as a parent.

We conclude that Grandmother has failed to show that Father is an "unfit parent" who should not enjoy the fit-parent presumption.

Significant Impairment of Physical Health or Emotional Well-Being

As the Texas Supreme Court explained, "[t]he Legislature set a high threshold for a grandparent to overcome the presumption that a fit parent acts in his children's best interest: the grandparent must prove that denial of access would '*significantly* impair' the children's physical health or emotional well-being." *In re Derzapf*, 219 S.W.3d 327, 334 (Tex. 2007) (emphasis in original).

Regarding significant impairment to A.J.R.B.'s emotional well-being, Grandmother and her daughter testified at the final hearing that Grandmother viewed herself as A.J.R.B.'s mother for the first six years of A.J.R.B.'s life, and that they believed it would be in A.J.R.B.'s best interest to continue to have contact with Grandmother. On appeal, Grandmother also points to her bond with A.J.R.B. and her former role as primary caretaker of the child. Significant impairment may be inferred from removing a child from a nonparental caretaker when the removal would be "devastating" or similar to "psychological amputation" or cause "serious psychological damage." *See In re N.H.*, 652 S.W.3d at 498. But there must be some evidence explaining how the impairment would be "significant." *Id.* Grandmother failed to present any evidence of "significant impairment" to A.J.R.B.'s emotional well-being if court-ordered access was not granted.

Regarding significant impairment to A.J.R.B.'s physical health, Grandmother testified at the final hearing that she had concerns with Father's "emotional disorders" and "stress," and the suspected physical abuse described above. However, Grandmother did not explain how Father's post-traumatic stress disorder diagnosis could significantly impair A.J.R.B.'s physical health, and as noted above, there was testimony that his diagnosis had no effect on his ability to parent A.J.R.B. There was also testimony that A.J.R.B. was not being physically abused by Father and that she was happy and thriving in his home.

We conclude that the trial court did not abuse its discretion in impliedly determining that Grandmother failed to prove by a preponderance of the evidence that denial of court-ordered grandparent access would significantly impair A.J.R.B.'s physical health or emotional well-being.

Best Interest

Finally, in Grandmother's second issue, she argues that "[i]t was not in the best interest of the child to have no contact with her grandmother." More specifically, through analysis of the *Holley* factors, she argues that it would be in the child's best interest to have a continuing relationship with her and that "[t]here was no evidence presented that it would be in the best interest of the child to have no relationship at all with her grandmother." *See Holley v. Adams*, 544 S.W.2d 367, 371-72 (Tex. 1976).

As held by the Texas Supreme Court, "a court must apply the presumption that a fit parent—not the court—determines the best interest of the child in any proceeding in which a nonparent seeks conservatorship or access over the objection of a child's fit parent." *In re C.J.C.*, 603 S.W.3d at 817. A fit parent does not have the burden of disproving that visitation with a nonparent would be in the best interest of his child. *Id.* at 815-16. Further, Father did not foreclose the possibility of a future relationship between A.J.R.B. and Grandmother. Rather, he testified that, "as [A.J.R.B.] gets older, I wouldn't mind [Grandmother] having a relationship with [A.J.R.B.]." He objected to court-ordered access at the time of the final hearing as not being in A.J.R.B.'s best interest because

Grandmother "weaponized" the visits and treated them "more like an interrogation rather than a grandmother/granddaughter visit," causing disruption in A.J.R.B.'s life.

As the sole judge of the witnesses' credibility, conflicts in the evidence were within the province of the trial court to resolve, and we defer to those findings. Father, as sole managing conservator, enjoys the fundamental right to make decisions concerning the care, custody, and control of his child without governmental intrusion. *Id.* at 811; *In re Mays-Hooper*, 189 S.W.3d at 778. We conclude that the trial court did not abuse its discretion in denying grandparent access or possession to Grandmother. Accordingly, we overrule Grandmother's first and second issues on appeal.

## Conclusion

Having overruled both of Grandmother's issues on appeal, we affirm the judgment of the trial court.

STEVE SMITH
Justice

Before Chief Justice Gray,
    Justice Johnson, and
    Justice Steve Smith
Affirmed
Opinion delivered and filed December 12, 2024
[CV06]

