Carolyn Farmer DOLMAN, Appellant,

v.

Mrs. Louise P. DOLMAN, Appellee.

No. 12993.

Court of Civil Appeals of Texas, Austin.

Aug. 1, 1979.

Rehearing Denied Aug. 22, 1979.

Mary P. Beḋman, Florence, Bill Buckner, Georgetown, for appellant.

Edgar A. Nooning, III, Georgetown, for appellee.

SHANNON, Justice.

This appeal involves questions concerning grandparents' rights to access pursuant to Tex.Family Code Ann. § 14.03(d) (Supp. 1978).

On June 16, 1967, the district court of Travis County entered a judgment granting appellant Carolyn F. Dolman a divorce from Denver Floyd Dolman. The judgment awarded custody of Lise Nicole Dolman, an infant daughter, to Carolyn with reasonable visitation privileges awarded to Denver.

On May 23, 1978, appellee Louise P. Dolman, the paternal grandmother of Lise, appearing *pro se*, filed a "motion to modify" the divorce judgment of June 16, 1967. By her motion appellee sought to be named "Possessor Conservator" and in addition, sought visitation rights pursuant to § 14.-03(d). Appellee acquiesced in the transfer of the cause to the district court of Williamson County. By a subsequent filing, which we construe to be an amended motion, appellee abandoned her plea to be named "Possessor Conservator" and sought only "right of access" to the child.

Trial was to a jury. The court's charge contained two special issues. The jury answered: (1) that it was in the best interest of the child to grant the grandmother access rights to the child, and (2) that one day each calendar month for eight consecutive hours was reasonable access. "Access rights" were defined in the charge to mean "rights of visitation with the child." The parties made no complaint of the charge.

Appellant attacks the judgment by a number of points of error.[1] She complains by her first point that the district court erred in entering judgment for appellee because Tex.Family Code Ann. § 14.03 does not provide a grandparent an independent cause of action for reasonable access rights to a child in the custody of a fit custodial parent.

Generally, the obligation of the custodial parent to permit visitation by a grandparent is a moral obligation, not a legal one. *Deweese v. Crawford,* 520 S.W.2d 522 (Tex.Civ.App.1975, writ ref'd n. r. e.). It is held generally that the courts will not enforce a right of visitation by a grandparent nor intervene in the relationship between the grandchild and the custodial parent. *Deweese v. Crawford, supra* ; Gault, *Statutory Grandchild Visitation,* 5 St. Mary's L.J. 474 (1973).

Texas Family Code Ann. § 14.03 (Supp. 1978), as amended, effective August 29, 1977, provides:

"(a) If a managing conservator is appointed, the court may appoint one or more possessory conservators and set the time and conditions for possession of or access to the child by the possessory conservators and others.

"(b) On the appointment of a possessory conservator, the court shall prescribe the rights, privileges, duties, and powers of the possessory conservator.

"(c) The court may not deny possession of or access to a child to either or both parents unless it finds that parental pos-

---

1. Appellant does not complain of appellee's failure to plead and prove that the circumstances of the child or person affected by the order have materially and substantially changed since the entry of the order sought to be modified. Tex.Family Code Ann. § 14.08(c) (Supp. 1978). Any possible error caused by such failure was waived.

session or access is not in the best interest of the child and that parental possession or access would endanger the physical or emotional welfare of the child.

"(d) If the court finds that it is in the best interests of the child as provided in Section 14.07 of this code, the court may grant reasonable access rights to either the maternal or paternal grandparents of the child; and to either the natural maternal or paternal grandparents of a child whose parent-child relationship has been terminated or who has been adopted before or after the effective date of this code. Such relief shall not be granted unless one of the child's legal parents at the time the relief is requested is the child's natural parent. The court may issue any necessary orders to enforce said decree."

The Tyler Court of Civil Appeals construed the statute in *Goolsbee v. Heft,* 549 S.W.2d 34 (Tex.Civ.App. 1977, no writ). In *Goolsbee* the maternal grandparents sought access to the child of their deceased daughter. The district court granted right of access to the grandparents. The child's father, on appeal, contended that a parent, absent pleading and proof of unfitness, has an absolute right of custody and control, and that the district court could not award access to grandparents over the objection of the sole surviving parent. The Tyler court rejected the father's argument, quoting § 14.03(d) and holding: "This statute clearly gives the grandparents the right to judicially seek visitation rights to the child, and the court has the authority to order such visitation rights in favor of the grandparents. Such power is not subject to the will of the parent; otherwise, the statute would be without force."

The Dallas Court of Civil Appeals in *Barrientos v. Garza,* 559 S.W.2d 399 (Tex.Civ. App. 1977, no writ), declined to follow the rule in *Goolsbee.* Candleria Garza, the maternal grandmother, sought right of access to the children of her deceased daughter. The children were residing with their father and stepmother. The district court entered an order awarding the grandmother "access to and visitation with the children." The Court of Civil Appeals reversed the judgment and rendered judgment denying the grandmother all relief.

In *Barrientos* the father contended, as does appellant in the case at bar, that § 14.03 does not provide a grandparent an independent cause of action for access rights to a child in the custody of a fit custodial parent. The court held that the condition expressed in subdivision (a) of § 14.03, "If a managing conservator is appointed," applies to the subsequent subdivisions. Stated another way, § 14.03(a) limits the application of § 14.03(d) to those cases where the court appoints a managing conservator. If the court has not appointed a managing conservator, then the statute does not empower the court to award access to the grandparents.

■ In this appeal we need not choose between the rule in *Goolsbee* and that in *Barrientos.* Under the rule in either case appellee is entitled to maintain her suit for access. Appellant's possession of Lise is pursuant to a court order. Although the divorce judgment, being prior to the enactment of the Texas Family Code, did not name appellant as managing conservator, her appointment by the judgment as custodian of Lise has the same effect. Point of error one is overruled.

■ We also overrule appellant's constitutional attack on the grandparents' access provision of the Family Code. "The state has sufficient interest in the family relationship to permit legislation in this area." *Deweese v. Crawford, supra.*

Point of error four is that the district court erred in rendering judgment for appellee because the finding by the jury that access by appellee was in the best interest of the child was against the great weight and preponderance of the evidence. Appellant does not attack the judgment by a "no evidence" point of error.

■ In reviewing factual sufficiency points of error, the court considers all of the evidence to determine whether the findings are so against the great weight and prepon-

derance of the evidence as to be manifestly unjust. *In re King's Estate,* 150 Tex. 662, 244 S.W.2d 660 (1951).

■ Appellee established that she was Lise's paternal grandmother. Lise was about eleven years and nine months old at trial time. Before trial, appellee had not seen Lise since the child was about nineteen months old. According to appellee, she had never learned to pronounce the child's name correctly. She had not written Lise since the child had learned to read. During the intervening years, appellee had tried to see the child several times, but appellant had prevented the visits. In May of 1977, appellee attempted to visit Lise during school hours. She asked a school custodian the whereabouts of Lise Dolman. The custodian directed appellee to a fourth grade class where a child, Lisa Bruce, attended. Lisa Bruce was called from the classroom to see her "grandmother." Lisa protested that appellee was not her grandmother and that she was not at all familiar with places or transactions appellee recounted. Nevertheless, appellee insisted that indeed she was the child's grandmother and persisted in having the child pose for pictures with her. The pictures were taken and appellee introduced them as exhibits in the trial of this case. Appellant called the teacher, Elizabeth Ramsel, to prove that the pictures depicted Lisa Bruce, not Lise Dolman. Appellant herself also testified that the child in the pictures was not her daughter. Even after this testimony, appellee did not appear entirely persuaded of her mistake.

As neither party called Lise as a witness, there is no evidence reflecting her desires with respect to visitation.

Appellee testified that she loved the child. Appellee testified further that the child, by knowing her, would have "added security and another steadfast pillar to lean on as she faces life." Appellee felt that Lise, by knowing her paternal grandmother, would be given variety and additional love and affection. Appellee testified that she had a nice home in San Antonio.

Denver Dolman, appellee's son and Lise's father, testified that if he were still married to appellant he would not consent to his mother visiting Lise. He recounted his very unhappy childhood with appellee. He chose to live with someone else as a child because life with his mother was "intolerable." He described his mother as a "very strong woman, a very powerful personality," capable of overwhelming a child. His life with his mother was "miserable," being loved by his mother one moment and despised by her the next for reasons that he has never understood.

In his capacity as "possessory conservator" of Lise, Dolman testified that he would not voluntarily consent to his mother's visitation. He claimed that Lise would be harmed and hurt "psychologically" by that visitation. Appellee, in Denver's opinion, would give Lise a "terrible self-image." Dolman believed that his mother was a "very sick woman and should not be allowed to have possession by law of any small child."

Appellant, naturally, testified in effect that appellee's visitation with the child would not be in the best interests of the child. Appellant viewed appellee as an aggressive person who by her energy and lavish responses made appellant feel as if she were "being pushed into a corner." Although not very well articulated, appellant's testimony was that appellee would, if given the opportunity, take over the rearing of the child. Appellant decided early in the child's life to resist appellee by cutting off all communication with her. She returned birthday and Christmas gifts that appellee sent Lise in 1969.

From our review of the record, we are convinced that the jury's answer is based upon little more than the well accepted notion that it is meet and right for a grandparent to know his grandchild. Appellee did not demonstrate by a preponderance of the evidence that the welfare or special needs of Lise would be served by appellee's visitation. Indeed, there is considerable support in the record that visitation would *not* be in the best interests of Lise. There was evidence that allowance of visitation by appellee could be disruptive and emotional-

ly detrimental to the child. In addition, the record raises doubt concerning appellee's fitness to be placed in a position of authority over a child even for short periods of time. In sum, this Court, after considering all of the evidence, is of the opinion that the jury's answer to special issue one is so contrary to the great weight and preponderance of the evidence as to be manifestly unjust.

The judgment is reversed and the cause is remanded to the district court for new trial.