**In the Interest of C.P.J. and S.B.J.**

No. 05–02–01639–CV.

Court of Appeals of Texas,
Dallas.

Aug. 4, 2003.

Brian L. Webb, Webb & Ackels, P.C., Dallas, for Appellant.

Mary D. McKnight, Law Office of Mary D. McKnight, Dallas, for Appellee.

Before Justices JAMES, FRANCIS, and LANG.

## OPINION

Opinion by Justice LANG.

This is an appeal from the trial court's order modifying an existing agreed visitation order between Marshall M. Jackson and his former parents-in-law Ronnie and Cheryl Adams, the appellees. The agreement allowed the Adamses scheduled visitation of their grandchildren, C.P.J. and S.B.J., Jackson's two minor children. In two issues, Jackson argues (1) the trial court's order amending the previous visitation schedule infringes on his fundamental right to direct the care, custody, and control of his children; and (2) he is entitled to request termination of the previous order, even though he agreed to it, because a recent United States Supreme Court decision constitutes a "change in circumstances." For reasons that follow, we resolve appellant's issues against him and affirm the trial court's order allowing the Adamses' visitation.

### Factual and Procedural Background

Jackson married Stephanie Adams in May 1989. The couple had two daughters: S.B.J. in 1989 and C.P.J. in 1993. Stephanie died of leukemia in October 1994. Af-

ter her death, the Adamses, Stephanie's mother and father, babysat and cared for the children during the daytime hours so Jackson could continue to work. Sometime in May 1997, Jackson enrolled the children in an after-school daycare program. The children no longer visited the Adamses on a daily basis. In the summer of 1997, Jackson announced that he would marry his girlfriend, Kathy, in December of that year. Kathy had two daughters of her own. One was over the age of eighteen and lived outside the home, while the other was a minor who would live with Jackson, Kathy, C.P.J., and S.B.J.

The Adamses filed a petition for grandparent access on July 31, 1997. After mediation, Jackson and the Adamses agreed on a schedule allowing the Adamses regular visits with the children that included some weekends, holidays, and birthdays. The trial court entered an order approving the parties' agreement on February 10, 1999.

On October 30, 2000, Jackson filed a "motion to modify" the Adamses' visitation order, in which he asked the trial court to terminate the Adamses' visitation due to "changed circumstances" in light of the Supreme Court's decision in *Troxel v. Granville*, 530 U.S. 57, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000).[1] Alternatively, Jackson requested that the Adamses' visitation of the children be "significantly reduced." The trial court held hearings on June 6 and June 18, 2001. On September 16, 2002, the trial court denied Jackson's request to terminate visitation. However, the court modified the visitation schedule to omit Sundays and otherwise reduce the amount of time C.P.J. and S.B.J. were to spend with the Adamses. Jackson then brought this appeal, asking this Court to set aside the visitation order altogether because the statute is unconstitutional as applied to him.

## GRANDPARENT VISITATION RIGHTS

In the trial court and on appeal, Jackson states specifically that the "Texas grandparent visitation statute"[2] is unconstitutional as it applies to him. However, at the trial court, in the briefs before us, and at oral argument, Jackson's argument articulates a challenge that the statute is unconstitutional on its face. Regardless of this inconsistency, his claim is obviously premised on the Supreme Court's decision in *Troxel v. Granville*.

Specifically, Jackson relies on *Troxel* for the proposition that fit parents hold a special interest "in the care, custody, and

---

1. Jackson filed his motion to modify under the provisions of article 156.101 of the Texas Family Code, which provides:

   The court may modify an order or portion of a decree that provides for . . . the possession of or access to a child if modification would be in the best interest of the child and . . . the circumstances of the child, a conservator, or other party affected by the order have materially and substantially changed since the date of the rendition of the order . . .

   TEX. FAM.CODE ANN. § 156.101 (Vernon 2002). Jackson also relies on *In re T.J.K.*, 62 S.W.3d 830, 832 (Tex.App.-Texarkana 2001, no pet.), for its proposition that a change in the law can constitute a "change in circumstances."

2. The Texas visitation statute is located in section 153.433 of the family code. It provides, in part:

   The court shall order reasonable access to a grandchild by a grandparent if:
   (1) at the time the relief is requested, at least one biological or adoptive parent of the child has not had that parent's parental rights terminated; and
   (2) access is in the best interest of the child, and at least one of the following facts is present:
   (A) the grandparent requesting access to the child is a parent of a parent of the child and that parent of the child . . . is dead. . . .

   TEX. FAM.CODE ANN. § 153.433 (Vernon 2002).

control of their children ... [which] is perhaps the oldest of the fundamental liberty interests recognized." *Troxel,* 530 U.S. at 65, 120 S.Ct. 2054. Further, Jackson cites *Troxel* for its holding that when a court decides non-parental visitation rights, it must accord material weight to a fit parent's decision of how to raise his child. *See id.* Jackson argues that because there is neither an allegation by the Adamses nor a finding by the trial court that he was or is unfit, the trial court's decision to continue visitation by the grandparents necessarily infringes upon his parental liberty interest. This *"Troxel* argument" is the substance of Jackson's first issue. Jackson's second issue varies slightly from the first in that he claims he is entitled to request termination of the 1999 order, despite his agreement to it, because *Troxel* itself constitutes a "change in circumstances."

### A. Standard of Review

■ As a general rule, we give wide latitude to a trial court's decision on custody, control, possession, and visitation matters. *Jacobs v. Dobrei,* 991 S.W.2d 462, 463 (Tex.App.-Dallas 1999, no pet.). Generally the trial court's decision will be reversed only if it appears from the record as a whole that the trial court abused its discretion. *Gillespie v. Gillespie,* 644 S.W.2d 449, 451 (Tex.1982). A trial court abuses its discretion when it acts arbitrarily or unreasonably, without reference to any guiding rules or principles. *Worford v. Stamper,* 801 S.W.2d 108, 109 (Tex. 1990). When a party does not request findings of fact, we infer that the trial court made all the necessary findings to support its judgment. *Id.; see also Roberson v. Robinson,* 768 S.W.2d 280, 281 (Tex. 1989); *Jacobs,* 991 S.W.2d at 463.

■ However, where the application of a statute to the facts of a given case is claimed to be unconstitutional or where the statute is claimed to be facially unconstitutional, we are not confronted with factual or legal sufficiency issues or even abuse of discretion issues. Instead, we must ascertain the fundamental issue of whether an appellant's constitutional rights were violated. Because the constitutionality of a statute raises a question of law, we review this particular issue de novo. *See Barshop v. Medina County Underground Water Conservation Dist.,* 925 S.W.2d 618, 629 (Tex.1996).

■ Although we use the Supreme Court's holding in *Troxel* as our template for analysis, we are mindful that the analysis begins with the presumption that the legislative enactment is constitutional. *See Gen. Servs. Comm'n v. Little–Tex Insulation Co., Inc.,* 39 S.W.3d 591, 598 (Tex. 2001) (citing *Barshop,* 925 S.W.2d at 629); *see also Glazer's Wholesale Distribs., Inc. v. Heineken USA, Inc.,* 95 S.W.3d 286, 298 (Tex.App.-Dallas 2001, pet. granted, judgm't vacated w.r.m.). Furthermore, the party challenging the constitutionality of a statute bears the burden of demonstrating that the enactment fails to meet constitutional requirements. *See Little–Tex,* 39 S.W.3d at 598; *Glazer's Wholesale,* 95 S.W.3d at 298 (citing *Tex. Pub. Bldg. Auth. v. Mattox,* 686 S.W.2d 924, 927 (Tex. 1985)).

### B. Authorities Respecting the Constitutionality of Family Code Section 153.433

We note at the outset of our analysis that the United States Supreme Court's holding in *Troxel* is clearly limited to the application of the Washington statute to the facts of that case. Accordingly, we cannot apply *Troxel* as a sweeping indictment of all non-parental visitation statutes in general or as to the Texas statute in particular. Further, the United States Supreme Court expressly declined to define

the precise scope of the parental due process right in the visitation context. *See Troxel*, 530 U.S. at 73, 120 S.Ct. 2054. There the Court said, "Because we rest our decision on the sweeping breadth of [the Washington statute] and the application of that broad, unlimited power in this case ... [w]e do not, and need not, define today the precise scope of the parental due process right in the visitation context." *Id.* The Court continued: "Because much state-court adjudication in this context occurs on a case-by-case basis, we would be hesitant to hold that specific nonparental visitation statutes violate the Due Process Clause as a per se matter." *Id.*

It is clear that a parent does hold a special liberty interest in the care, custody, and control of the parent's children. That liberty interest of parents includes the right "to direct the upbringing and education of children under their control." *Id.* at 65, 120 S.Ct. 2054 (citing *Pierce v. Soc'y of Sisters*, 268 U.S. 510, 534–35, 45 S.Ct. 571, 69 L.Ed. 1070 (1925)). Children are not "mere creature[s] of the State." *Troxel*, 530 U.S. at 65, 120 S.Ct. 2054 (citing *Pierce*, 268 U.S. at 535, 45 S.Ct. 571). The decisions of the Supreme Court with respect to this parental right reflect "Western civilization concepts of the family as a unit with broad parental authority over minor children." *Bates v. Tesar*, 81 S.W.3d 411, 436 (Tex.App.-El Paso 2002, no pet.) (citing *Santosky v. Kramer*, 455 U.S. 745, 753, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982)); *see also Troxel*, 530 U.S. at 66, 120 S.Ct. 2054 (citing *Meyer v. Nebraska*, 262 U.S. 390, 399, 43 S.Ct. 625, 67 L.Ed. 1042 (1923) ("[W]e held that the 'liberty' protected by the Due Process Clause includes the right of parents to 'establish a home and bring up children' and 'to control the education of their own.' ")). Accordingly, when a court is injected into a situation wherein it is asked to make decisions respecting the competing wishes of a fit parent and the child's grandparents, the court "must accord at least some special weight to the parent's own determination." *Troxel*, 530 U.S. at 70, 120 S.Ct. 2054.

Several Texas courts have addressed the grandparent visitation statute since the *Troxel* decision was delivered. However, no decision has directly held that the statute is unconstitutional. In *Lilley v. Lilley*, 43 S.W.3d 703 (Tex.App.-Austin 2001, no pet.), the court held specifically that section 153.433 is "not unconstitutional on its face or in the district court's application to the facts at hand." *Id.* at 713. Differing somewhat with the *Lilley* holding, the El Paso court of appeals, in *Roby v. Adams*, 68 S.W.3d 822, (Tex.App.-El Paso 2002, pet. denied), reversed the trial court's judgment granting grandparent visitation. *Id.* at 828. The El Paso court stated that it was "[h]eeding the holding in *Troxel*," but it did *not* declare the statute to be unconstitutional either facially or as applied. *Id.* at 824. Instead, the El Paso court engrafted upon the statute a presumption that the parent is fit, that a fit parent is presumed to act in the best interests of the child, and that without a finding of parental unfitness, no grandparent visitation can be allowed over the parent's objection. *Id.* at 828–29. The Texarkana court of appeals, in the case of *In re T.J.K.*, 62 S.W.3d 830 (Tex.App.-Texarkana 2001, no pet.), held that the father had not waived his right to challenge the constitutionality of section 153.433 despite having entered into an earlier agreed visitation order with the child's grandmother. *Id.* at 833. The court did not address the merits of the father's constitutionality claim but remanded the case to the trial court for further proceedings.

Because these cases dealing with a challenge of section 153.433 were narrowly decided under the facts before the respective

courts, we view them as describing a path under those facts. They are not controlling in the case we now consider. However, we are mindful that the court in *Lilley* resolved against the appellant an attack on the facial constitutionality of the statute. Likewise, we note that at least two other courts have declined to hold the statute to be facially unconstitutional. *Dolman v. Dolman*, 586 S.W.2d 606, 608 (Tex.Civ. App.-Austin 1979, writ dism'd); *Deweese v. Crawford*, 520 S.W.2d 522, 526 (Tex.Civ. App.-Houston [14th Dist.] 1975, writ ref'd n.r.e.), *overruled on other grounds by Cherne Indus., Inc. v. Magallanes*, 763 S.W.2d 768 (Tex.1989). Based on the arguments made here by appellant and on this record, we decline to take the position that the statute is facially unconstitutional.

### C. Application of Law To the Facts

In this case, our evaluation under *Troxel* of specifically how the trial court applied the facts to the statute is hampered by the absence of findings of fact and conclusions of law. However, because this is a de novo review, we look to the evidence in the record and consider Jackson's claim that the Adamses' visitation must be terminated on constitutional grounds in light of *Troxel*.

The facts in the instant case show that Jackson had agreed to the Adamses' visitation in 1999. At the hearing on his motion to modify, Jackson testified he was not *refusing* to allow visitation. Rather, he asked that there be no court order *directing* visitation. Jackson stated that he preferred to make the decisions regarding visitation with some "flexibility" so that there would be little interference with the lives of his children as part of the new family.

The Adamses direct our attention to their own testimony and that of Jackson which showed that Jackson had blocked the Adamses' telephone calls to the children. There was also testimony that Jackson ignored or was rude to the Adamses on occasion and sometimes refused to talk to them in public places. Further, Dianna Lynn Rumsey, a court-appointed counselor, testified regarding her discussions with Jackson prior to the 1999 agreed order. Rumsey stated that Jackson had expressed his view that visitation once or twice a year would be sufficient. Additionally, Jackson testified at the hearing that it was his belief that because of the visitation statute, the Adamses were "guaranteed" some form of visitation by law. The Adamses point to this amalgam of testimony as reflecting (1) Jackson's tendency to allow only that visitation which is ordered by the court, and (2) Jackson's potential for avoiding the Adamses' visitation altogether were it within his sole discretion. Essentially, the Adamses argue the trial court could have determined a court order was necessary to ensure *some* visitation, despite Jackson's testimony that the children should have a relationship with their grandparents and despite his assurances that visitations would continue.

We conclude there are at least several pivotal facts which show that the trial court did not deny due process to Jackson respecting his parental rights. First, Jackson agreed to the 1999 visitation order, which specifically found that visitation was in the "best interests of the children." Additionally, the trial court was presented with Jackson's testimony, which complained that the currently ordered visitation schedule was excessive and that there was a conflict between Sunday visitation with the children's church attendance. By reducing the visitation schedule and excluding Sunday visitation, the trial court's judgment plainly resolved any such conflict. Further, Jackson testified he was not refusing visitation by the Adamses. In fact, at one time, Jackson said he believed

visitation by the Adamses was "guaranteed" by law. However, there was concern raised by the Adamses that without an order, Jackson would not allow visitation. Based upon the foregoing, we conclude the relief ordered by the trial court respecting Jackson's motion and the application of the grandparent access statute to Jackson does not violate his due process rights as described in *Troxel.* It is apparent that the trial court was able to craft its decision by according "at least some special weight to the parent's own determination." *See Troxel,* 530 U.S. at 70, 120 S.Ct. 2054.

## CONCLUSION

Based upon the facts before us and the arguments made on appeal by the parties, we conclude the record does not reflect that the trial court failed to "accord at least some special weight to the parent's own determination" when it made the decision to modify the prior visitation order rather than terminate it. *See Troxel,* 530 U.S. at 70, 120 S.Ct. 2054. Accordingly, we conclude section 153.433 of the Texas Family Code is not unconstitutional on the basis of the holding in *Troxel* as that statute is applied to Jackson. Additionally, based upon the record and the arguments developed in this case, we cannot say that the statute is unconstitutional on its face. We resolve Jackson's two issues against him and affirm the judgment of the trial court.