166 S.W.3d 373 (2005)
In the Interest of B.R.S. and A.N.S., Children, Appellants.
No. 10-04-00110-CV.
Court of Appeals of Texas, Waco.
May 25, 2005.
Rehearing Overruled June 21, 2005.
*374 Brian J. Tehan, Dallas, for appellants.
Constance McGuire, Kendall Lee Drew, Waxahachie, for appellee.
Before Chief Justice GRAY, Justice VANCE, and Justice REYNA.

OPINION
BILL VANCE, Justice.
Lewis Seward and Carol Seward (Grandparents) sought to modify the parent-child relationship to seek court-ordered access to B.R.S. and A.N.S. Their November 2005 petition was opposed by both their son Jacob Seward and their former daughter-in-law Deanna Seward, who had divorced in October of 2002.
Without hearing evidence on the merits of the Grandparents' claim, the trial court found the grandparent visitation statute, sections 153.432 and 153.433 of the Family Code, unconstitutional and dismissed the claim. TEX. FAM.CODE ANN. §§ 153.432, 153.433 (Vernon 2002). The Grandparents appeal.
The sole issue before us is whether the statute is facially unconstitutional under Troxel v. Granville, 530 U.S. 57, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000). We review the trial court's finding under an abuse of discretion standard. Gillespie v. Gillespie, 644 S.W.2d 449, 451 (Tex.1982).
In 2001, the Austin Court of Appeals held that the statute is not unconstitutional on its face. Lilley v. Lilley, 43 S.W.3d 703, 712 (Tex.App.-Austin 2001, no pet.). Other courts of appeals have agreed with that holding.[1]In re C.P.J., 129 S.W.3d 573, 578 (Tex.App.-Dallas 2003, pet. denied); In re Pensom, 126 S.W.3d 251, 254 (Tex.App.-San Antonio 2003, no pet.).
We join those courts in holding that the grandparent access statute is not unconstitutional on its face. TEX. FAM.CODE ANN. §§ 153.432, 153.433. Thus, we hold the trial court abused its discretion in dismissing the claim by the Grandparents. See Gillespie, 644 S.W.2d at 451; Lilley, 43 S.W.3d at 712. We reverse the trial court's dismissal order and remand the cause for further proceedings under the statute.
Chief Justice GRAY dissenting.
TOM GRAY, Chief Justice, dissenting.
The wrong standard of review.
No analysis.
The wrong result.
I dissent.

*375 OVERVIEW
Ultimately, this case will turn on whether the-best-interest-of-the-child finding necessarily includes an affirmative finding on the elements of a constitutionally permissible state intervention into the parent-child relationship. But first, we must address our standard of review, then the burden of proof on the best-interest-of-the-child finding, and then standing. Only then can we analyze what the best-interest-of-the-child finding includes, or must take into consideration.

BACKGROUND
We do not write on a clean slate. But this is the first appeal in Texas in which a trial court has examined the Texas Grandparent Access statute and determined that, as written, it does not comport with substantive due process of the fourteenth amendment as interpreted by the United States Supreme Court in Troxel v. Granville.[1] It is not the first time this particular trial judge has so ruled; it is simply the first time his determination has been brought to us on appeal. He wants a definitive ruling. I want him to have one. I agree with his legal analysis and conclusion.
This is a case which deserves a substantial amount of analysis. But the majority refuses to do the analysis. Look at what they offer you as an opinion. It references other cases but disclaims the analysis of those cases. So it is nothing more than a reversal of the trial court without explaining why. The cross-points, properly raised, are not even mentioned. Cross-points upon which the judgment could be affirmed raise other serious constitutional issues that were presented to the trial court and include an equal protection challenge to the validity of the statute.
I would prefer to conduct an extensive analysis of the cases the majority cites, as well as other Texas cases, and explain in greater detail why, in truth, a proper facial challenge analysis has not yet been conducted of this statute. I will, however, only lay out the outline of what I believe a proper analysis must consider and the answer based upon my limited analysis. See In the Interest of S.A.P., 135 S.W.3d 165, 177 (Tex.App.-Waco 2004) (Gray, C.J., dissenting) (discussing the delay by conducting a full analysis), rev'd, 156 S.W.3d 574 (Tex.2005).
What greatly assisted me in my limited analysis is an Attorney General opinion on the validity of the statute. Op. Tex. Att'y Gen. No. GA-0260, 2004 WL 2326558, 2004 Tex. AG LEXIS 9228 (Oct. 13, 2004). This opinion summarizes the Texas cases that have discussed the statute. The Attorney General ultimately concludes that the statute is constitutionally valid:
... the Texas Grandparent Access Statute, is constitutional on its face. It may be constitutionally applied, however, only in light of the limitations imposed by Troxel v. Granville, 530 U.S. 57, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000). In order to avoid an unconstitutional application of the statute, a court must require a grandparent to "overcome the presumption that a fit parent acts in the best interest of his or her child." In re Pensom, 126 S.W.3d 251, 256 (Tex.App.-San Antonio 2003, no pet.). To overcome the presumption, "a grandparent has the burden to prove, by a preponderance of the evidence, either that the parent is not fit, or that denial of access by the grandparent would significantly impair the child's physical health or emotional well-being." Id. at 256.
*376 While the summary was helpful, its conclusion is not controlling authority. Tussey v. State, 494 S.W.2d 866, 870 n. 3 (Tex.Crim.App.1973); Weaver v. Head, 984 S.W.2d 744, 746 (Tex.App.-Texarkana 1999, no pet.). The problem with every case that examined the statute, and ultimately the Attorney General's opinion as well, is that the reviewing court was examining the statute as the statute was applied in each of the various cases on the facts and holding of each case. The Attorney General, then, simply reviewed the cases to see if the court determined whether the Grandparent Access statute violated the U.S. Supreme Court's holding in Troxel. Thus, I do not believe any court or agency has conducted a proper analysis of a facial challenge to the Grandparent Access statute. The Attorney General's opinion follows the discussion of the cases and characterizes the analysis as a facial analysis. I must, however, ask the question: was it really a facial analysis if the analysis focused on the provisions that courts have "engrafted" onto the statute so as to make it comply with Troxelprovisions not in the statute, provisions that are added by an appellate court in an ad hoc effort to make the statute survive a facial challenge?

A FACIAL ANALYSIS
The facial challenge analysis that needs to be performed is an analysis of the statute as written, not an analysis based upon a provision engrafted upon the statute by a court to make the statute work. See FM Props. Operating Co. v. City of Austin, 22 S.W.3d 868, 873 (Tex.2000). As a legal question, we decide the issue without regard to the trial court's decision, de novo. See Tex. DOT v. Needham, 82 S.W.3d 314, 318 (Tex.2002); In the Interest of C.P.J., 129 S.W.3d 573, 576 (Tex.App.-Dallas 2003, pet. denied).
The statute provides:
§ 153.432. Suit for Access
(a) A biological or adoptive grandparent may request access to a grandchild by filing:
(1) an original suit; or
(2) a suit for modification as provided by Chapter 156.
(b) A grandparent may request access to a grandchild in a suit filed for the sole purpose of requesting the relief, without regard to whether the appointment of a managing conservator is an issue in the suit.
§ 153.433. Possession of and Access to Grandchild
The court shall order reasonable access to a grandchild by a grandparent if:
(1) at the time the relief is requested, at least one biological or adoptive parent of the child has not had that parent's parental rights terminated; and
(2) access is in the best interest of the child, and at least one of the following facts is present:
(A) the grandparent requesting access to the child is a parent of a parent of the child and that parent of the child has been incarcerated in jail or prison during the three-month period preceding the filing of the petition or has been found by a court to be incompetent or is dead;
(B) the parents of the child are divorced or have been living apart for the three-month period preceding the filing of the petition or a suit for the dissolution of the parents' marriage is pending;
(C) the child has been abused or neglected by a parent of the child;
(D) the child has been adjudicated to be a child in need of supervision or a delinquent child under Title 3;
(E) the grandparent requesting access to the child is the parent of a *377 person whose parent-child relationship with the child has been terminated by court order; or
(F) the child has resided with the grandparent requesting access to the child for at least six months within the 24-month period preceding the filing of the petition.
TEX. FAM.CODE ANN. §§ 153.432 & 153.433 (Vernon 2002).

BURDEN OF PROOF
The trial court was concerned about the burden of proof. To determine who has the burden of proof, I use a technique taught by an esteemed Baylor Law School professor. The technique asks a simple question  "Who wins if no one puts on any evidence?" See Hardy v. State, 50 S.W.3d 689, 698 (Tex.App.-Waco 2001) (Gray, J., concurring), aff'd, 102 S.W.3d 123, 129 (Tex.2003).
In this instance, if no one presents any evidence of the best interest of the child, the grandparents are not entitled to court ordered access. Thus, the burden of proof is clearly on the grandparent to prove what the best interest of the child is for there to be grandparent access.

STANDING
Next, a brief note about standing. This statute is not as broad as the Washington statute at issue in Troxel. To establish standing to bring the suit, a person must be a grandparent and one of the specific conditions set out in the statute must be met. See TEX. FAM.CODE ANN. §§ 153.432 & 153.433 (Vernon 2002). There is no issue in this case that the petitioners are grandparents and that the parents are divorced, thus meeting Section 153.433(2)(B) of the statute. But it is the disparate treatment of divorced parents as opposed to married parents that leads to Deanna Seward's cross-point that this disparate treatment violates the Equal Protection Clause. This provision would likewise apply if one of the parents were working away from home such as serving in the military or as an overseas contractor. Thus, I agree with Justice Marion on the San Antonio Court in concluding that our statute is better than the Washington statute because standing was used to limit the breadth of those who could seek the State's assistance in interfering with the parent-child relationship. In re Pensom, 126 S.W.3d 251, 254 (Tex.App.-San Antonio 2003, no pet.).[2] But limiting the breadth by limiting who has standing, alone, will not cure the statute's ailments if it suffers other constitutional shortcomings.

BEST-INTEREST-OF-THE-CHILD ANALYSIS
Now we must turn our attention to the crux of the statute, the best interest of the child. The best interest of the child is not defined in the context of this statute. That is ultimately why this statute fails the facial challenge.
The best-interest terminology is very familiar to Texas family law attorneys, child protective services case workers, legislators, courts, etc. It is frequently a part of some other analysis. For example,
 to remove disabilities of minority, the best interest of the minor must be explained in the petition. TEX. FAM.CODE ANN. § 31.002(a)(5) (Vernon 2002);
 in a judicial bypass to parental notification of a minor's decision to have an *378 abortion, the trial court shall determine whether parental notification would not be in the minor's best interest. TEX. FAM.CODE ANN. § 33.003(i) (Vernon 2002);
 the change of a child's name must be in the child's best interest. TEX. FAM.CODE ANN. § 45.004(a)(1) (Vernon Supp.2004-2005);
 in placing a delinquent child on probation outside his home or committing the child to the Texas Youth Commission, the juvenile court shall include in its order that placement outside the home is in the child's best interest. TEX. FAM.CODE ANN. § 54.04(i)(1)(A) (Vernon Supp.2004-2005);
 the best interest of the child is the primary consideration in conservatorship of, possession, and access to a child. TEX. FAM.CODE ANN. § 153.002 (Vernon 2002);
 an order of support conforming to the child support guidelines is presumed to be in the best interest of the child. TEX. FAM.CODE ANN. § 154.122 (Vernon 2002);
 certain factors are used to determine the best interest of the child at a permanency hearing when the child is in the care of the Department of Protective and Regulatory services. TEX. FAM.CODE ANN. § 263.307 (Vernon 2002).
But the best-interest test itself is a factor test, not an element test.
As a factor test, it is composed of a review of the evidence of various factors. The most common rendition of the best-interest test comes from Holley. Holley v. Adams, 544 S.W.2d 367, 372 (Tex.1976). And it has frequently been stated that it is a balancing test. Evidence on each factor need not be presented, and it is possible that evidence on a single factor can overwhelm the evidence on all other factors. See In re C.H., 89 S.W.3d 17, 27 (Tex.2002); In the Interest of J.M.T., 39 S.W.3d 234, 240 (Tex.App.-Waco 1999, no pet.). We typically review a trial court's determination of the best-interest test under the abuse of discretion standard. See e.g. Gillespie v. Gillespie, 644 S.W.2d 449, 451 (Tex.1982) (custody determination); Green v. Remling, 608 S.W.2d 905, 908 (Tex.1980) (adoption decree); In the Interest of H.E.L., No. 10-04-00204-CV, 2005 WL 170644, *1-2, 2005 Tex.App. LEXIS 609, * 4-5 (Tex.App.-Waco Jan. 26, 2005, no pet.) (mem.op.) (change of child's name); In the Interest of A.C.S., 157 S.W.3d 9, 20 (Tex.App.-Waco 2004, no pet.) (modification of custody/relocation of child).
The exception to the typical review of best interest is the review of best interest in a termination of parental rights case. In those cases, best interest has been reviewed for legal and factual sufficiency of the evidence. See In the Interest of J.F.C., 96 S.W.3d 256, 265-267 (Tex.2002). But even in a review of a termination case, it is still a review of evidence of the various factors which is used to determine the overall sufficiency of the evidence.
An element test, on the other hand, requires affirmative proof on each element of the test. A failure to prove each element of the test means the person with the burden of proof loses. An element test is typically reviewed for sufficiency of the evidence, both legal sufficiency and factual sufficiency. The most common form of an element test is the proof of a cause of action. For example, a negligence cause of action has three elements: 1) a legal duty; 2) breach of that duty; and 3) damages proximately resulting from the breach. Van Horn v. Chambers, 970 S.W.2d 542, 544 (Tex.1998). The plaintiff loses his case by his failure to prove any one of these elements. In Van Horn, the plaintiffs failed to prove the existence of a *379 legal duty; thus, the Supreme Court rendered a judgment that the plaintiffs take nothing on their claims. Van Horn v. Chambers, 970 S.W.2d 542 (Tex.1998).
What the various courts that have been confronted with the Grandparent Access statute in Texas have done is judicially engraft onto the factor analysis of a traditional best-interest test the two specific elements enumerated in Troxel, an affirmative finding on at least one of which is necessary to make the Grandparent Access statute constitutional.
The two elements that courts have engrafted upon the best-interest test to overcome the presumption that a fit parent acts in the best interest of his or her child which must be accorded great weight in the balancing analysisrather than a vanishing presumption that evaporates when contrary evidence is introducedare either 1) an affirmative finding that the parent is not fit; or 2) an affirmative finding that the child would suffer injury if grandparent access is not ordered. See In re Pensom, 126 S.W.3d 251, 256 (Tex.App.-San Antonio 2003, no pet.) (engrafted elements 1 and 2); In the Interest of C.P.J., 129 S.W.3d 573, 579 (Tex.App.-Dallas 2003, pet. denied) (generally engrafted elements[3] 1 and 2); Roby v. Adams, 68 S.W.3d 822, 828 (Tex.App.-El Paso 2002, pet. denied) (facial challenge not specifically addressed but generally engrafted elements 1 and 2 and denied access); see also Lilley v. Lilley, 43 S.W.3d 703 (Tex.App.-Austin 2001, no pet.).
Because under no established best-interest analysis in Texas has best interest been defined to require an affirmative finding on either of these engrafted elements, and because an affirmative finding on either of these elements is required before the statute meets constitutional muster under Troxel, the statute is not constitutional on its face. See Tex. DOT v. Needham, 82 S.W.3d 314, 318 (Tex.2002) (terms should be interpreted consistently in every part of an act.). Those courts that have engrafted a required finding onto the best-interest analysis have simply performed the legislative function of adding the elements necessary to make the statute constitutional. That is not the proper role of the judiciary. "In sum, that the application of an unconstitutional statute can, in some cases, reach the same result as the application of a constitutional statute does not make the unconstitutional statute constitutional." FM Props. Operating Co. v. City of Austin, 22 S.W.3d 868, 878 (Tex.2000).
Thus, because the best-interest analysis in Texas does not require an affirmative finding on either element necessary to make the statute constitutional, I would affirm the judgment of the trial court.[4]

CONCLUSION
The problems of this case are not nearly so easily swept under the rug as the majority opinion might suggest. As written, the statute survives a challenge that it is facially unconstitutional only by a tortured application of presumptions and engrafting *380 onto the best-interest-of-the-child test determinations that are not part of that test in any other context. The statute is broken. It needs to be fixed. The question is do we act where the legislature has not, or do we call it the way it is? Other courts have struggled with the question and cobbled together what they no doubt hoped would be a temporary fix based upon the facts as developed in a given case. A brave, and correct, trial judge did not succumb to the temptation in this case to try to fix the statute by engrafting provisions onto it that are simply not there. I, too, would not. As a conservative jurist, I would do my job and await the time with patience until the legislature has fixed the constitutional problems in this statute.[5]
I dissent.
NOTES
[1] We cite these cases only for the holding of facial constitutionality, not for their discussions of how the statute is to be applied.
[1] Troxel v. Granville, 530 U.S. 57, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000).
[2] This is an excellent opinion that engages in more analysis than most. Another excellent opinion is by Justice Lang from the Fifth Court of Appeals. In the Interest of C.P.J., 129 S.W.3d 573 (Tex.App.-Dallas 2003, pet. denied). Ultimately, however, both opinions looked at the facts of the case and what the trial court had engrafted upon the factor analysis, thus reverting to an "as applied" analysis rather than a facial validity analysis.
[3] The court only discussed the presumption of a fit parent acting in the best interest of the child which is the general presumption giving rise to the need to prove one of the specific elements.
[4] I do not find it necessary to reach the equal protection argument presented by cross-point. But I have grave concerns about a statute that would compel divorced parents of a child to allow grandparent visitation when the same grandparents could not compel visitation with the children of married parents. This case presents a situation where both of the divorced parents agree that the parents should not be compelled by the State to allow the paternal grandparents access to their children.
[5] This issue is currently before the legislature in Tex. H.B. 261, 79th Leg., R.S. (2005).