

**In The**
**Court of Appeals**
**Sixth Appellate District of Texas at Texarkana**

_____

No. 06-08-00088-CV
_____

IN THE MATTER OF THE MARRIAGE OF
ALEJA A. CAMPBELL AND JOSHUA GENE CAMPBELL
AND IN THE INTEREST OF ADAM DANTE CAMPBELL,
ANDREW MICHAEL CAMPBELL, AND ETHAN
NATHANIEL CAMPBELL, CHILDREN

On Appeal from the 354th Judicial District Court
Hunt County, Texas
Trial Court No. 71,585

Before Morriss, C.J., Carter and Moseley, JJ.
Memorandum Opinion by Justice Carter

MEMORANDUM OPINION

Aleja A. Campbell appeals a trial court's grant of her petition for divorce from Joshua Gene Campbell. As requested by both parties, the trial court awarded Aleja and Joshua joint managing conservatorship of their three children. Aleja now appeals the order on the sole ground that the trial court erred when it allowed Joshua's mother, Carolyn Campbell, to exercise Joshua's visitation rights while he was incarcerated. We find the trial court abused its discretion in granting visitation to a nonparty in the absence of evidence demonstrating the children's denial of access to Carolyn would significantly impair their emotional well-being. Accordingly, we reverse the trial court's order of grandparent access to Carolyn and render judgment denying Carolyn court-ordered access and possession of the children.

## I.     Procedural Background

Aleja filed a petition for divorce asking that she and Joshua "be appointed joint managing conservators." She consented to a temporary order appointing both parties as joint managing conservators and set up a visitation schedule. Because Joshua was incarcerated in federal prison, he granted his mother power of attorney "to act for [him] and stand in [his] stead" with respect to the divorce proceedings. Carolyn did not file any petition or intervention in the suit. Joshua's deposition on written questions requested the court to allow his mother to exercise his periods of possession until his release from custody.

Aleja testified in the following manner at trial on direct examination:

Q.  You don't have any problem with his mother, who is here today, taking the children to see him up in Oklahoma one weekend a month; is that correct?

A.  No, I don't.

Prior to Joshua's incarceration, Carolyn and Joshua lived together. The children would split their time equally between Carolyn and Joshua's home and Aleja's home. During cross-examination, Aleja agreed that the children had "a close relationship" and a "very strong bond" with Carolyn. Although Aleja further stated:

Q.  Would you have any objection to her exercising a visitation schedule that was similar to a standard possession schedule in the place of her son, your husband, until such time as he is released from federal prison?

A.  I don't have a problem with that, you know.

Q.  Okay.

A.  She can see them more times than once a week, you know, once a month or whatever.

Q.  Okay.

A.  I don't have a problem with that.

Q.  So you don't have any problem with a standard possession order and letting her exercise it, with you having custody?

A.  But I don't want that. You know, I just said I want once a month and that's it. On my own, I'm willing -- I'm willing to let her see the kids more than that.

Q.  Have you been letting her see the kids the last couple of months?

3

A. The last few months actually she's seen them. I took the boys over there in -- I don't remember exactly when, sometime last month, I think, they went over there.

Q. Have you been letting her call them and contact them and talk with them?

A. I don't have a phone, so --

Carolyn also testified at trial, stating she had assisted in raising the children for "all of their lives" and that the children's rooms were as they had always been in Joshua's home. Carolyn claimed that, since Joshua went to prison,[1] she was only able to see the children "here and there." She claimed, "I haven't been able to talk to them or see them for birthdays or nothing like that." Carolyn stated that it was important for the children to be exposed to their father's side of the family and that it was in their best interest for them to spend quality time with the paternal family in their old home.

At the conclusion of the trial, the trial court awarded Joshua's mother possession or access to the children:

> The Court is going to grant the divorce, appoint the parties as joint managing conservators with primary possession with the petitioner, mother.
>
> . . . .
>
> As to the requests by the paternal grandmother for some access, the Court will -- I'm not going to give a straight standard possession order. However, I will give from 6:00 p.m. Friday to 6:00 p.m. Sunday on the first and third Fridays unless preempted by holidays and specifically at Christmas from noon December 26th to noon December 29th.

---

[1]Joshua's answers to a deposition on written questions indicates he received a fifty-month sentence in federal prison with an expected release date of November 2010.

. . . .

[A]fter his incarceration, Mr. Campbell will have a standard possession order.

The final divorce decree appointed Aleja and Joshua joint managing conservators, set a visitation schedule, and further ordered "for so long as JOSHUA GENE CAMPBELL remains incarcerated . . . he shall have possession of and access to the children exercised by his mother, CAROLYN CAMPBELL."[2]

On appeal, Aleja contends the trial court erred in awarding Carolyn possession or access to the children because Carolyn failed to file formal pleadings and there was no evidence contesting the parental presumption "that a parent acts in the best interest of the parent's child," such that the trial court could award grandparent access under Section 153.433 of the Texas Family Code.[3] Aleja also argues the trial court's order circumvented the principles of *Troxel v. Granville*, 530 U.S. 57 (2000).

---

[2]Carolyn argues she is merely exercising her son's right of visitation, but she cites no authority that would allow one person to exercise the visitation right of another. We construe the substance of the decree to grant Carolyn possession and access to the children at designated times. The decree further grants Joshua a standard possession order on his release from incarceration.

[3]Due to the fact that the court set a visitation schedule and granted "Possession and Access," to be exercised by Carolyn, we reject the notion that this case can be decided based on Section 153.316(6) of the Texas Family Code, which allows either parent to designate a competent adult to pick up and return the child. *See* TEX. FAM. CODE ANN. § 153.316(6) (Vernon 2008).

5

## II. Standard of Review

An abuse of discretion standard applies to a trial court's determination of grandparent access or possession under Section 153.433 of the Texas Family Code. *In re J.P.C.*, 261 S.W.3d 334, 335–36 (Tex. App.—Fort Worth 2008, no pet.); *see* TEX. FAM. CODE ANN. § 153.433 (Vernon 2008). Although Section 153.433 "does not specifically include a best interest analysis, section 153.002 dictates that the best interests of the child shall always be the primary consideration" when determining conservatorship, possession, and access issues. *J.P.C.*, 261 S.W.3d at 336; *see* TEX. FAM. CODE ANN. § 153.002 (Vernon 2008). A trial court is given "wide latitude in determining the best interests of a minor child." *Stallworth v. Stallworth*, 201 S.W.3d 338, 347 (Tex. App.—Dallas 2006, no pet.) (quoting *Gillespie v. Gillespie*, 644 S.W.2d 449, 451 (Tex. 1982)). Because the trial court is in a position to analyze the facts, we are without power to reverse the judgment unless we find that the record as a whole demonstrates the trial court abused its discretion. *Id.*; *In re Marriage of Edwards*, 79 S.W.3d 88, 98 (Tex. App.—Texarkana 2002, no pet.); *Halamka v. Halamka*, 799 S.W.2d 351 (Tex. App.—Texarkana 1990, no writ).

Abuse of discretion does not occur if some evidence of substantive and probative character exists to support the trial court's decision. *J.P.C.*, 261 S.W.3d at 336. However, because a trial court has no discretion in determining what the law is or applying the law to the facts, discretion is abused

6

when it grants access to a grandparent who fails to meet the statutory requirements of Section 153.433.  *Id.*; *In re B.N.S.*, 247 S.W.3d 807, 808 (Tex. App.—Dallas 2008, no pet.).[4]

### III.     The Trial Court Erred in Applying the Statutory Requirements of Section 153.433 of the Texas Family Code

#### A.      The History and Limitations of the Grandparent Access Statute

Aleja argues the trial court circumvented the principles espoused in *Troxel*.  This United States Supreme Court case held unconstitutional a "breathtakingly broad" Washington statute that allowed "any person" to petition for visitation with children "at any time" because it infringed on a parent's right to make decisions concerning the care, custody, and control of their children.  530 U.S. 57, 60 & 67 (reversing order of grandparent visitation); *Lilley v. Lilley*, 43 S.W.3d 703, 711 (Tex. App.—Austin 2001, no pet.).

The United States Supreme Court discussed issues such as the "slender findings" made by the trial court in its determination that visitation was in the best interests of the children, and further stated in dicta:

> [W]e do not consider the primary constitutional question passed on by the Washington Supreme Court—whether the Due Process Clause requires all nonparental visitation statutes to include a showing of harm or potential harm to the

---

[4]We point out that findings of fact and conclusions of law were not requested or filed.  In such situations, "the judgment of the trial court implies all necessary findings to support it, provided the proposition is raised in the pleadings, supported by evidence, and the trial judge's theory is consistent with the evidence and the applicable law."  *Casas v. Adriano*, No. 13-06-373-CV, 2007 WL 1941422, at *2 (Tex. App.—Corpus Christi July 5, 2007, no pet.) (mem. op., not designated for publication) (quoting *Schoeffler v. Denton*, 813 S.W.2d 742, 744 (Tex. App.—Houston [14th Dist.] 1991, no writ)).

child as a condition precedent to granting visitation. We do not, and need not, define today the precise scope of the parental due process right in the visitation context.

*Troxel*, 530 U.S. at 73.

In October 2004, Attorney General Greg Abbott issued an opinion addressing the constitutionality of the prior Texas grandparent access statute following the *Troxel* decision. Op. Tex. Att'y Gen. No. GA-0260 (2004). He concluded that, while the prior grandparent access statute could be applied constitutionally, it could only be applied in light of the limitations imposed by *Troxel*. *Id.* To meet the constitutional standard, a court would have to require a grandparent to overcome the presumption that a parent acts in the best interest of his or her child by proving by a preponderance of the evidence that the parent is not fit or that denial of grandparent access significantly would impair the child's well-being. House Research Organization, Bill Analysis, Tex. H.B. 261, 79th Leg., R.S. (2005).

As a consequence of the Attorney General's opinion, Section 153.433 of the Texas Family Code was amended to allow reasonable possession of or access to a grandchild only if:

> (1) at the time the relief is requested, at least one biological or adoptive parent of the child has not had that parent's parental rights terminated;

> (2) the grandparent requesting possession of or access to the child overcomes the presumption that a parent acts in the best interest of the parent's child by proving by a preponderance of the evidence that denial of possession of or access to the child would *significantly impair* the child's physical health or emotional well-being; *and*

> (3) the grandparent requesting possession of or access to the child is a parent of a parent of the child and that parent of the child:

> > > (A) has been incarcerated in jail or prison during the three-month period preceding the filing of the petition.

TEX. FAM. CODE ANN. § 153.433 (emphasis added).

The new statutory requirements removed Section 153.433 from the "breathtakingly overbroad" category, and distinguished it from *Troxel*, thereby allowing our sister courts to hold the statute constitutionally sound. *In re B.R.S.*, 166 S.W.3d 373, 374 (Tex. App.—Waco 2005, no pet.); *In re C.P.J.*, 129 S.W.3d 573, 576–77 (Tex. App.—Dallas 2003, pet. denied); *In re Pensom*, 126 S.W.3d 251, 254 (Tex. App.—San Antonio 2003, no pet.); *Lilley v. Lilley*, 43 S.W.3d 703, 710–11 (Tex. App.—Austin 2001, no pet.). We analyze this case in accordance with the requirements set forth in Section 153.433 to determine whether the trial court erred in awarding Carolyn access to the three children.

> **B.      There Was No Evidence That Significant Impairment to Children's Emotional Well-Being Would Result If Carolyn Was Not Granted Court-Ordered Access**

In 2005, the Legislature "set a high threshold for a grandparent to overcome the presumption that a fit parent acts in his children's best interest:" Carolyn was required to prove that denial of access would significantly impair the children's physical health or emotional well-being. *See In re Derzapf*, 219 S.W.3d 327, 333 (Tex. 2007); *see also* TEX. FAM. CODE ANN. § 153.433(2).[5] As amended, Section 153.433 recognizes "so long as a parent adequately cares for his or her children (i.e., is fit), there will normally be no reason for the State to inject itself into the private realm of the

_____

[5]Aleja does not contest any requirement under subsections (1) or (3) of Section 153.433. Further, there is no evidence regarding the children's physical health.

9

family." *Derzapf*, 219 S.W.3d at 333 (quoting *In re Mays-Hooper*, 189 S.W.3d 777, 778 (Tex. 2006)).[6]

Here, the court determined that it would be in the best interest of the children to award both parents joint managing conservatorship, presumably because both parents were fit. During trial, the court learned that the children were spending equal amounts of time between Aleja and Joshua and Carolyn and that the children had their own room with their belongings at Joshua and Carolyn's home. Aleja admitted to the close relationship and strong bond the children had with Carolyn. Although Aleja stated she did not "have a problem with" Carolyn visiting the children, she did not wish the court to order grandparent access. Also, there was some evidence that Aleja had restricted Carolyn's access to the children.

From these facts, while the trial court could have agreed with Carolyn that it would benefit the children to be exposed to Carolyn, there was no evidence that the parental presumption was overcome by proof that denying court-ordered access would *significantly impair* the children's well-being. *See id.* at 333–34; *J.P.C.*, 261 S.W.3d at 337–38 (court was "unpersuaded" by grandparents' arguments that they should be allowed access because of their significant and lengthy past contact with child in their home, testimony that child's behavior was different after restricted access, and assertions that child was longing to see grandparents); *In re J.R.D.*, No. 05-06-01554-CV, 2007 WL

---

[6]This principle assumes that parents will encourage their children's visits and contacts with loving grandparents, making it unnecessary for the State (by judicial order) to intervene. Here, Aleja has acknowledged the importance of the children maintaining a close bond with Carolyn.

10

4415879, at *1 (Tex. App.—Dallas Dec. 19, 2007, no pet.) (mem. op., not designated for publication) (mother's testimony that it was "important to her child's growth and emotional health to have a relationship with his grandparents" was considered no evidence that denial of access would significantly impair child's health or well-being). In fact, the record is devoid of any testimony regarding the children's emotional well-being in general. An opinion that it would be beneficial for the children to spend quality time with Carolyn is not sufficient to satisfy the grandparent access statutory requirements. Since there was no evidence of significant impairment to the children's emotional well-being, the trial court erred in ordering Carolyn the right to exercise Joshua's visitation.

## C.    Carolyn Was Required to Intervene or File Formal Pleadings on Her Behalf

Aleja also argues that, since no formal pleadings were filed by Carolyn, the trial court erred in awarding her possession and access to the children. Joshua's response focuses on the doctrine of trial by consent. Unpleaded claims or defenses that are tried by express or implied consent of the parties are treated as if they had been raised by the pleadings. *Roark v. Stallworth Oil & Gas, Inc.*, 813 S.W.2d 492, 495 (Tex. 1991). The party who allows an issue to be tried by consent and who fails to raise the lack of a pleading before submission of the case cannot later raise the pleading deficiency for the first time on appeal. *Id.* In the proper instance, the issue of grandparent access can be tried by consent, and technical rules of practice and pleadings are of little importance in determining issues concerning the custody of children. *See In re W.M.*, 172 S.W.3d 718, 728 (Tex.

11

App.—Fort Worth 2005, no pet.) (grandparents did not specifically plead for grandparent access, but issue was tried by consent where grandparents had intervened in action and attorney's statements in court emphasized intent to try issue).[7]  But here, a more basic problem appears; Carolyn was not a party to this matter; she neither filed her own petition, nor was she named as a third party.  The Texas Family Code delineates the manner in which to bring such an action.

Section 153.432 of the Texas Family Code sets forth the method by which grandparents may gain access to or possession to children.  TEX. FAM. CODE ANN. § 153.432 (Vernon 2008).  Carolyn could have intervened if she had met the statutory requisites for standing as set forth in Section 102.004.  *See* TEX. FAM. CODE ANN. § 102.004 (Vernon 2008).  In this case, there was no attempt to satisfy the statutory requirements for grandparent intervention; thus, Carolyn's request for grandparent access was not before the trial court.  A judgment may not be granted in favor of a nonparty who has not intervened.  *Exito Electronics Co. v. Treja*, 166 S.W.3d 839, 852 (Tex. App.—Corpus Christi 2005, no pet.) (citing *Fuqua v. Taylor*, 683 S.W.2d 735, 738 (Tex. App.—Dallas 1984, writ ref'd n.r.e)); *Landry v. Nauls*, 831 S.W.2d 603, 605 (Tex. App.—Houston [14th Dist.] 1992, no writ).

While Aleja seeks reversal of the entire divorce decree, Section 44.1(b) of the Texas Rules of Appellate Procedure allows us to reverse only the award of grandparent access.  *See* TEX. R. APP. P. 44.1(b).

---

[7]Since Carolyn had been granted a power of attorney by her incarcerated son, it was represented that she was appearing at the divorce hearing on her son's behalf.

**IV.**    **Conclusion**

For the reasons stated above, we hold that the trial court abused its discretion in awarding the grandmother access to and possession of the children.  Accordingly, we reverse that portion of the trial court's judgment and render judgment denying Carolyn court-ordered access and possession of the children.

                                                       Jack Carter
                                                       Justice

Date Submitted:    February 24, 2009
Date Decided:      February 27, 2009