**Affirmed and Opinion Filed February 21, 2024**



**In The**

**Court of Appeals**

**Fifth District of Texas at Dallas**

## No. 05-22-01175-CV

## IN THE INTEREST OF L.B., A CHILD

**On Appeal from the 304th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. 15-00714**

## MEMORANDUM OPINION

Before Justices Molberg, Pedersen, III, and Nowell
Opinion by Justice Molberg

Mother appeals from the trial court's order denying her motion to modify conservatorship. Mother, possessory conservator of her daughter L.B., sought to replace L.B.'s paternal aunt (Aunt) as sole managing conservator of the child, and following a hearing, the trial court denied the requested modification. In three issues, Mother argues (1) the trial court erred in failing to appoint her sole managing conservator; (2) the trial court failed to apply the fit parent presumption under *Troxel v. Granville*; and (3) Aunt failed to meet her burden of proof to show Mother was an unfit parent. We affirm in this memorandum opinion.

## Background

On May 23, 2016, the trial court signed a final decree in a suit affecting the parent–child relationship. Among other things, the court found that appointing Mother as managing conservator of L.B. was not in the child's best interest because such appointment would significantly impair the physical health or emotional development of the child. The court appointed the Department of Family and Protective Services managing conservator, but upon Aunt's completion of the Fostering Connections Program, Aunt was to be made managing conservator. Mother and Father were appointed possessory conservators of L.B. All periods of access between Mother and L.B. were to be as arranged, agreed, and supervised at the discretion of the managing conservator. On November 30, 2017, the trial court appointed Aunt permanent managing conservator. Mother was continued as possessory conservator.

On November 12, 2021, Mother filed a petition to modify the parent–child relationship. She sought to become sole managing conservator and alleged the circumstances of the child, conservator, or other affected party had materially and substantially changed since the final decree. Mother filed a second petition two months later requesting the court to award Mother standard visitation.

The trial court conducted a hearing on the petitions. Rhonda Rieken, the attorney ad litem for L.B., informed the court that the child, who was nine years old at the time of hearing, had lived with Aunt for the past seven years. Rieken said that

Mother was still with the same partner, D.S., she had been with when the final decree was entered. She said that, since the prior order, Mother and D.S. have had four children and they were all in Mother's care. They had a home and vehicles. Rieken said that although Mother and D.S. were in a better financial position than they had been previously, Mother continued to deny the reasons why the court previously declined to make her managing conservator. In particular, Rieken said concerns about domestic violence remained. She said "[D.S.'s] own family . . . and [Mother's] own family today still say that there's domestic violence and that [L.B.] would not be safe around [D.S.] because of his explosive temper, his history of touching little girls, and his history of having sex with a fourteen-year-old child when he was a grown man." She said Mother had still not participated in domestic violence counseling despite previously being ordered by the court to do so. Rieken was concerned Mother could not be protective of L.B.

As to visitation, Rieken said Mother and Aunt had reached out to each other and were "having regular visits." She said L.B. wanted to continue with regular visits to get to know Mother and her half-siblings better. Rieken said L.B. was "terrified that mom will just dump her again" like Mother seemed to do when she was angry following a hearing and refused to answer L.B.'s phone calls for an extended period of time. Given this, Rieken thought a visitation schedule of a specific time every other week would help L.B.'s confidence and her relationship with Mother. Rieken believed the visits needed to be supervised by Aunt. Rieken

said at one point an unsupervised weekend with Mother was allowed, and Mother "went against the rules and took [L.B.] out of state, was not answering phone calls, and . . . did not bring [L.B.] back at the agreed time." Afterwards, further unsupervised visits were disallowed.

Mother denied she did not answer L.B.'s phone calls but said L.B. did not always answer her calls. She said Aunt blocked her from everything, including Facebook. Mother said she did not think only visits should be considered, but that "it's in the best interest of my child to be here with me and her siblings." Mother presented no other testimony or evidence.

Aunt said she was not comfortable only having contact with Mother but wanted a third party present at visits because Mother presented herself differently when others were present.

The trial court stated that because Mother was still with D.S., the court could not allow L.B. to be returned to her because it would not be in L.B.'s best interest. However, the trial court announced she would order regular visitation and phone and video contact. On December 20, 2022, the trial court signed an order denying the motion to modify conservatorship in the suit affecting the parent–child relationship but granting modification of the possession and access orders. The trial court found, among other things, there had not been a material and substantial change in circumstances of the child, conservator, or other party affected by the order since the entry of the final decree, and that appointment of Mother as managing conservator

–4–

would not be in the best interest of L.B. The order also modified the visitation schedule to require supervised visitation every other Saturday for two hours and phone or video contact with the child for set times on Monday, Wednesday, and Friday evenings. This appeal followed.

## Discussion

In three issues, Mother generally argues insufficient evidence supported the trial court's order and that she should have been made primary conservator of the child; the trial court failed to apply the fit parent presumption under *Troxel v. Granville*; and Aunt failed to meet her burden of proof to show Mother was an unfit parent.

As a general rule, we give wide latitude to a trial court's decision on custody, control, possession, and visitation matters. *In re C.P.J.*, 129 S.W.3d 573, 576 (Tex. App.—Dallas 2003, pet. denied). We will not disturb a trial court's decision on a motion to modify conservatorship unless the complaining party shows a clear abuse of discretion, meaning the trial court acted in an arbitrary and unreasonable manner or without reference to guiding rules or principles. *See In re C.F.M.*, No. 05-17-00141-CV, 2018 WL 2276351, at *3 (Tex. App.—Dallas May 18, 2018, no pet.) (mem. op.). As relevant here, a trial court may modify a conservatorship order only if the circumstances of the child, a conservator, or other party affected by the order have materially and substantially changed since the order was rendered and the modification would be in the child's best interest. TEX. FAM. CODE § 156.101(a)(1).

The party seeking modification bears the burden of establishing a material and substantial change in circumstances. *In re C.H.C.*, 392 S.W.3d 347, 349 (Tex. App.—Dallas 2013, no pet.). Changed circumstances may be established by circumstantial evidence, and the law does not prescribe any particular method for showing them. *See In re C.F.M.*, 2018 WL 2276351, at *2. To prove the necessary change occurred, the party seeking modification must demonstrate what conditions existed at the time of the entry of the prior order and what material conditions have changed in the intervening period. *In re S.N.Z.*, 421 S.W.3d 899, 909 (Tex. App.—Dallas 2014, pet. denied).

The trial court is in the best position to observe the demeanor and personalities of the parties and witnesses and to evaluate credibility, influences, and other forces that are not discernible from the record. *In re D.C.*, No. 05-12-01574-CV, 2014 WL 1887611, at *3 (Tex. App.—Dallas May 9, 2014, no pet.) (mem. op.). We view the evidence in the light most favorable to the trial court's decision, and every legal presumption is indulged in favor of its judgment. *Id.* In family law cases, insufficiency of the evidence is not an independent ground for asserting error but is a relevant factor in determining if the trial court abused its discretion. *Id.* To determine whether the trial court abused its discretion we consider whether the trial court (1) had sufficient evidence upon which to exercise its discretion and (2) erred in its exercise of that discretion. *In re S.I.J.*, No. 05-21-00918-CV, 2023 WL 6350473, at *7 (Tex. App.—Dallas Sept. 29, 2023, no pet.) (mem. op.). When an

order affects the conservatorship and possession of a child, the child's best interests are the primary consideration. *Id.*

Based on the record before us, we conclude the trial court did not abuse its discretion in denying Mother's requested modification to the conservatorship because Mother failed to present evidence establishing a material and substantial change in the circumstances of the child, a conservator, or other party affected by the order since the order was rendered or that such modification was in L.B.'s best interest. Mother presented no evidence demonstrating such a material and substantial change. For instance, Mother failed to present evidence showing what conditions existed at the time of the entry of the prior order. *See In re S.N.Z.*, 421 S.W.3d at 909. What evidence was presented through the ad litem showed that the original circumstances involving concerns about Mother's partner and domestic violence had not changed. Mother directs us to no evidence in the record in support of her contention that the circumstances have materially and substantially changed since the prior order was rendered. Furthermore, Mother does not point to any evidence in the record demonstrating the conservatorship modification was in the best interest of L.B. Accordingly, we conclude the trial court did not abuse its discretion in denying Mother's requested modification.

In reaching this conclusion, we necessarily reject Mother's contentions that Aunt had the burden of proof or that the trial court incorrectly failed to apply the fit parent presumption. The Legislature has adopted a presumption requiring a child's

parents be appointed managing conservators in initial child custody suits unless it would significantly impair the child's physical health or emotional development. *See* TEX. FAM. CODE § 153.131(a). This statutory presumption, however, "is not carried forward into the statute governing proceedings to modify those determinations." *In re C.J.C.*, 603 S.W.3d 804, 807 (Tex. 2020) (citing TEX. FAM. CODE § 156.101(a)(1)); *see also In re V.L.K.*, 24 S.W.3d 338, 342 (Tex. 2000) ("Chapter 156 does not provide for a parental presumption in modification suits."). In *Troxel v. Granville*, the Supreme Court of the United States applied a constitutional presumption that fit parents act in the best interest of their children in finding unconstitutional a trial court's order requiring a fit parent to permit visitation with the children's grandparents. 530 U.S. 57, 68 (2000). While the Supreme Court of Texas has concluded this constitutional presumption applies when modifying an existing order naming a parent as the child's managing conservator, s*ee In re C.J.C.*, 603 S.W.3d at 808, the court specified this holding "does not alter the burden of proof for modifications of court-ordered custody arrangements in which neither parent is named a managing conservator in the original order," *see id.* at 819.

Thus, Mother, who along with Father was not named managing conservator in the order she sought to modify, had the burden to demonstrate that the circumstances of the child, a conservator, or other party affected by the order have materially and substantially changed since the order was rendered and the modification would be in the child's best interest. *See* TEX. FAM. CODE

–8–

§ 156.101(a)(1); *In re C.H.C.*, 392 S.W.3d at 349; *see also In re R.A.*, No. 09-20-00275-CV, 2022 WL 7180524, at *7 (Tex. App.—Beaumont Oct. 13, 2022, no pet.) (mem. op.). As explained above, Mother did not meet that burden.[1] We overrule Mother's three issues.

## Conclusion

We affirm the trial court's order.

/Ken Molberg/
KEN MOLBERG
JUSTICE

221175f.p05

---

[1] Mother complains in her reply brief of reporter's record inaccuracies and recites facts not before us. These complaints are not properly before us because "an issue raised for the first time in a reply brief is ordinarily waived and may not be considered by this Court." *See Stovall & Assocs., P.C. v. Hibbs Fin. Ctr., Ltd.*, 409 S.W.3d 790, 803 (Tex. App.—Dallas 2013, no pet.); *see also Moreno v. Silva*, 316 S.W.3d 815, 817 (Tex. App.—Dallas 2010, pet. denied) ("Although we construe pro se pleadings and briefs liberally, we hold pro se litigants to the same standards as licensed attorneys and require them to comply with applicable laws and rules of procedure.").



## Court of Appeals
## Fifth District of Texas at Dallas

# JUDGMENT

IN THE INTEREST OF L.B., A
CHILD

No. 05-22-01175-CV

On Appeal from the 304th Judicial
District Court, Dallas County, Texas
Trial Court Cause No. 15-00714.
Opinion delivered by Justice
Molberg. Justices Pedersen, III and
Nowell participating.

In accordance with this Court's opinion of this date, the order of the trial court is **AFFIRMED**.

It is **ORDERED** that each party bear its own costs of this appeal.

Judgment entered this 21st day of February, 2024.